[No. 19393. Department Two. January 8, 1926.]

CHRIST ARTHUN, *Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

[1] MASTER AND SERVANT (121-2)—REMEDIES UNDER WORKMEN'S COMPENSATION ACTS—ELECTION OF REMEDIES. A workman in extrahazardous employments, injured by the negligence of another not in the same employment, is not required to make his election to sue such other, before suit brought, rather than to take under the workmen's compensation act; since such remedy at common law existed irrespective of Rem. Comp. Stat., § 7675, governing his rights under that act if he made the election to sue, and which election is merely for the protection of the state and the accident fund, in case of suit or recovery against a third person.

[2] MUNICIPAL CORPORATIONS (383, 391)—USE OF STREETS—CONTRIBUTORY NEGLIGENCE OF PERSON IN STREET—QUESTION FOR JURY. The negligence of a laborer, struck by a bus, is a question for the jury, where he, without keeping a constant lookout, was grouped with other workmen in labor on the street, about two feet over the edge of a pavement 18½ feet in width, with no traffic in sight other than two automobiles approaching from different directions.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 10, 1925, upon the verdict of a jury in an action for personal injuries. Affirmed.

*Thomas J. L. Kennedy* and *J. Ambler Newton,* for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

MITCHELL, J.—Christ Arthun, while engaged in the performance of work as a laborer for Grant Smith & Company, a contractor, in the laying of a line of pipe in and along Beacon Avenue in the city of Seattle, was struck and injured by an automobile bus operated by

[1]Reported in 242 Pac. 16.

the city in connection with its street car system. He sued the city, charging it with negligence, and recovered a verdict and judgment, from which the city has appealed.

[1] The first assignment of error is that the respondent failed to make his election to sue the city in advance of suit, as required by the workmen's compensation act, and thereby lost his right to sue the city.

The contention, we think, presents an erroneous view of the law. The portion of the workmen's compensation act directly involved is a part of § 7675, Rem. Comp. Stat., as follows:

"Workman means every person in this state, who is engaged in the employment of an employer coming under this act whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer: Provided, however, that if the injury to a workman occurring away from the plant of his employer is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of action against such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this act for such case. Any such cause of action assigned to the state may be prosecuted, or compromised by the department, in its discretion. Any compromise by the workman of any such suit, which would leave a deficiency to be made good out of the accident fund, may be made only with the written approval of the department."

The injury to the respondent was caused by the alleged negligence of another not in the same employ, creating the right of a common-law action against the wrongdoer, unless there is something in the workmen's compensation act which directly, or by necessary implication, is in derogation of that right. By common consent, that understanding of a statute which restricts or limits a common-law right must not be entertained, if possible to be avoided. For the moment, leaving out of consideration that portion of the act herein before quoted, our attention has not been called to any provision of the act, nor do we find any, under which it is, or can be, claimed that there has been any purpose or attempt to limit, modify or cancel the common-law liability of a third party because of his tortious injury of a workman. The law does him no harm, nor does it purport to help or relieve him. He contributes nothing to the fund it provides for, nor does he make any report to the commission that administers it. He is entirely without the scope of all its benefits. Nor is there anything to the contrary in that part of the act already quoted. In the situation therein mentioned, the party entitled to recover shall "elect whether to take under the act or seek a remedy against such other." The first is a new remedy given by the act; the other is not, nor does it purport to be, a new remedy, but simply a recognition of the right of a common-law action. If he take the first, his cause of action against the third party shall be assigned by him to the state for the benefit of the accident fund, which cause of action may be prosecuted or compromised by the department at its discretion. If the other choice is made—suit against the third party—the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected and the compensation provided or estimated

by the act for such a case. It is further provided that any compromise by the workman with the one causing the injury, which would leave a deficiency to be made good out of the accident fund, "may be made only with the written approval of the department." The election spoken of is in protection of the state because of its assurance and is in precise harmony with the declared policy of the workmen's compensation act, found in § 1, that "the remedy of the workman has been uncertain, slow and inadequate," and that the state, exercising its police and sovereign power, declares "sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided, etc." Accordingly, if an injured workman, or his widow, children or dependents in case of his death, exercising the choice given by the statute, sues the third party, without prior notice of election, and recover nothing, or upon recovery and the actual collection of less than the compensation provided or estimated by the act for such case, and then attempt to still further collect from the accident fund, the state would be heard attentively, if it insisted there could be no recovery if there had been a failure to elect prior to the commencement of the action against the third party. It is for the benefit of the state, in administering the accident fund, that provision is made for election to be in advance of any suit under this section and not at all for the benefit of the third party, who is at all times suable as at common law by the injured party or the state as assignee of the injured party.

In the case of *Lester v. Otis Elevator Co.,* 169 App. Div. 613, 155 N. Y. Supp. 524, cited with approval by the court of appeals of New York in *Rosebrock v. General Electric Co.,* 236 N. Y. 227, 140 N. E. 571, the appellate division of the supreme court considered a case very similar to the present one both as to the law and

controlling facts, holding that the plaintiff was entitled
to maintain a suit against the third party without prior
notice of election. The logic of that case is applicable
here. The opinion states:

"The appeal presents a single question, and that is
whether, under the Workmen's Compensation Law
(Consol. Laws, c. 67; chapter 816, Laws 1913, as re-
enacted by chapter 41, Laws 1914), the plaintiff could
maintain the action without alleging and proving his
election to do so, pursuant to section 29 of that act.
The workmen's compensation law provides a fixed
schedule of rates of compensation to be paid by em-
ployers to employes injured in the course of certain
hazardous employments, irrespective of the fault oc-
casioning the injury, and establishes a commission to
administer the statute and make awards. Employers
are required to secure the payment of the prescribed
compensation, in the manner provided in the statute,
and it is conceded that the plaintiff's employers, Bing
& Bing, had done so, and that the plaintiff might have
applied for such compensation, instead of claiming
damages from the defendant.

"Section 29 provides:

" 'Subrogation to Remedies of Employe. If a work-
man entitled to compensation under this chapter be
injured or killed by the negligence or wrong of another
not in the same employ, such injured workman, or in
case of death, his dependents, shall, before any suit or
claim under this chapter, elect whether to take com-
pensation under this chapter or to pursue his remedy
against such other. Such election shall be evidenced
in such manner as the commission may by rule or regu-
lation prescribe. If he elect to take compensation under
this chapter, the cause of action against such other
shall be assigned to the state for the benefit of the state
insurance fund, if compensation be payable therefrom,
and otherwise to the person or association or corpora-
tion liable for the payment of such compensation, and
if he elect to proceed against such other, the state in-
surance fund, person or association or corporation, as
the case may be, shall contribute only the deficiency, if

any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated by this chapter for such case. Such a cause of action assigned to the state may be prosecuted or compromised by the commission. A compromise of any such cause of action by the workman or his dependents at an amount less than the compensation provided for by this chapter shall be made only with the written approval of the commission, if the deficiency of compensation would be payable from the state insurance fund, and otherwise with the written approval of the person, association or corporation liable to pay the same.'

"In the present case the plaintiff in fact elected to pursue his remedy against the defendant, instead of claiming compensation under the statute, as an employe of Bing & Bing. But it is conceded that he did not file any evidence of his election with the commission, although the commission had, pursuant to section 29, prescribed a form of notice to be filed with it in such cases. The defendant claims that the filing of such a notice was a condition precedent to the maintenance of the action, and the court below was divided upon that point. 90 Misc. Rep. 649, 153 N. Y. Supp. 1058.

"Under section 29, the plaintiff was required to file such notice only before any suit or claim under this chapter. The present action was not a suit or claim under the statute, but a common-law action against the defendant for negligence. The plaintiff was not employed by the defendant, and it is a rather startling proposition that a third party can defeat an action against him for negligence merely because the victim happened to be an employe of another person and had not filed with the commission a notice of his election to exercise his common-law rights.

"In requiring an employe to make and evidence his election 'before any suit or claim under this chapter,' it seems to me that the legislature clearly intended the words 'under this chapter' to modify both 'suit' and 'claim,' so that the third party is not entitled to insist that such notice be given. If these words are construed to mean any suit, including a common-law action

against a third party, then the section is in derogation
of the common-law rights of the employe—a construc-
tion to be avoided where possible. *McManus v. Gavin*,
77 N. Y. 36; *Seligman v. Friedlander*, 199 N. Y. 373,
92 N. E. 1047; *Rosin v. Lidgerwood Mfg. Co.*, 89 App.
Div. 245, 86 N. Y. Supp. 49.''

Concluding the opinion, it is said:

"It seems to me, therefore, that the requirement that
the employe give evidence of his election to sue was
intended solely for the benefit of the person liable for
the statutory compensation, and was not intended to
curtail or affect the existing remedies of the employe
against the third party. Section 29 fully recognizes
the common-law remedy of the employe, and there is
nothing in the statute to indicate that the legislature
intended that it should be affected.

"It is doubtless a necessary conclusion that where
an employe brings such an action, without having duly
evidenced his election to do so, he would not be entitled
to any compensation under the statute, even though
he did not recover in such action the full amount to
which he would have been entitled under the statute.
Such a situation could arise only through the failure of
the employe to claim compensation under the statute
and his disregard thereof in failing to give notice of
his election. Neither the language nor the obvious
purpose of section 29, however, would justify a con-
struction holding the giving of such notice to be a con-
dition precedent to the maintenance of a common-law
action by an employe against a third party.''

[2] Another assignment of error presents the ques-
tion of the alleged contributory negligence of the re-
spondent, as a matter of law. Beacon avenue at the
scene of the accident runs north and south. The east-
erly eighteen and one-half feet of it was paved and
bore all the traffic. The water main was located on the
westerly side of the street. Uncovered pipe had been
laid in a ditch eight feet deep. Where two sections of
the pipe came together, it was necessary to dig a deeper
hole—called a bell hole—in order to rivet the joints.

The bell holes had become filled with water, and respondent with four or five other workmen was operating a pump to remove the water. The pump was built on a platform four feet long and two to two and one-half feet wide, and was kept on the westerly margin of the pavement. It was too heavy to be handily lifted and carried by the crew. Between the ditch and the westerly margin of the paved portion of the avenue there was loose dirt and debris, so that, in moving the pump from one bell hole to another, the crew, working northerly, dragged the pump along and on the westerly margin of the pavement. At the time of the accident, the crew was in the act of commencing to move the pump to another bell hole. At that time, the bus approached from the north while an automobile approached from the south. The driver of the bus saw the crew of workmen when he was two or three hundred feet away. At the same time he saw the approaching automobile beyond. The driver of the bus testified that he was going six or eight miles an hour before the accident, and

"I slowed down 10, 15 or 20 feet before I got to the men. I could have stopped my car right then and let the other car go by, and then go on and never hurt anybody. I was hesitating from the first time I saw it, because I did not know where it was going to pass me. I saw it was a dangerous situation."

Neither of the drivers of the vehicles gave any signal by horn or otherwise. The respondent was struck by the bus while he, at a point on and about two feet from the westerly margin of the pavement, facing away from the bus, was stooping down to take hold of the pump to assist in dragging it. It appears that the two automobiles met and passed each other at that point. None of the rest of the crew was in the way of the bus, and it appears that none of them observed

the bus before the accident. One of the crew, other than the respondent, testified that when the bus got up to the men the driver turned in towards the respondent, "just enough to kind of flop him over."

The reasonableness of respondent's care, or lack of it, under the circumstances, while grouped with other workmen in labor on the street, in taking in advance of his fellow workmen a position about two feet over the edge of a pavement eighteen and one-half feet in width, when no traffic was in sight other than two automobiles, without keeping a constant lookout for automobiles, was a question for the jury.

Affirmed.

TOLMAN, C. J., MAIN, and PARKER, JJ., concur.