[No. 26641. Department One. October 19, 1937.]

T. B. O'BRIEN, *Appellant,* v. NORTHERN PACIFIC
RAILWAY COMPANY, *Respondent.*[1]

*Henry Russell* and *Padden & Moriarty,* for appellant.

*L. B. daPonte, Robert S. Macfarlane,* and *Dean H. Eastman,* for respondent.

*The Attorney General* and *J. A. Kavaney, Assistant, amici curiae.*

BLAKE, J.—While in the course of his employment of operating a truck belonging to Elmer E. Hemrich

[1]Reported in 72 P. (2d) 602.

Brewery, Inc., plaintiff sustained injuries as the result of a collision of the truck with a train operated by the defendant. Although he was entitled to compensation under the industrial insurance act, plaintiff elected to sue the defendant for damages, alleging that the collision and his resultant injuries were caused by the negligent operation of the train, which at the time was engaged in interstate commerce.

Defendant interposed a demurrer to the complaint on the grounds: (1) That the court had no jurisdiction of the defendant, nor of the subject matter of the action; (2) that the complaint did not state facts sufficient to constitute a cause of action; (3) that, because of certain provisions of the industrial insurance act, no action could be maintained against it on the facts alleged in the complaint. The demurrer was sustained, and judgment dismissing the action entered. Plaintiff appeals.

It will not be necessary to summarize the complaint with respect to the circumstances and conditions under which the collision occurred, nor the acts of negligence charged. For it is conceded that the complaint is not vulnerable to demurrer on the ground that the facts alleged do not state a cause of action— assuming that its maintenance is not precluded by certain provisions of the industrial insurance act. Whether appellant is precluded from maintaining the action, depends primarily upon the construction of Rem. Rev. Stat., § 7675 [P. C. § 3470], which provides that a workman within the scope of the act, who is injured through the negligence of another not in the same employ, shall elect whether to take under the act or seek a remedy against such other,

" . . . Provided, however, That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident

such employer or such workman was in the course of any extra-hazardous employment under this act."

In final analysis, the question to be determined is: Is a third person, engaged in extrahazardous employment, but not amenable to contribution to the "accident fund," immune, under the above quoted proviso, from an action for negligence by an employee of another engaged in extrahazardous employment?

As we have indicated, appellant and his employer were engaged in extrahazardous employment under the act. And there is no question but that respondent, in the movement of the train, was engaged in an extrahazardous employment, as defined by the act. But respondent was not a contributor to the "accident fund," nor was it amenable to the provisions of the act requiring contribution to that fund with respect to its interstate operations. *Spokane & Inland Empire R. Co. v. Wilson,* 104 Wash. 171, 176 Pac. 34; *New York Central R. Co. v. Winfield,* 244 U. S. 147, 37 S. Ct. 546, Ann. Cas. 1917D, 1139; *Goldsmith v. Payne,* 300 Ill. 119, 133 N. E. 52.

In the case last cited, the supreme court of Illinois was confronted with the identical question here presented, under a statutory provision quite similar to the proviso of Rem. Rev. Stat., § 7675. That court reached the following conclusion:

"Therefore, when engaged in interstate commerce the appellee and his employees so engaged are not bound by the act, and he is not entitled to the benefit of the provisions of section 29 in favor of employers who are bound by the act."

But respondent contends that it is brought within the purview of the industrial insurance act by Rem. Rev. Stat., § 7693 [P. C. § 3486]. After reciting that it had proven impossible, in the case of employees of common carriers by railroads engaged in interstate

and intrastate commerce, to separate and distinguish the connection of employees with interstate from their connection with intrastate commerce, with the result that such employees received no compensation under the act, the section provides:

" . . . the provisions of this act shall not apply to work performed by such employes in the maintenance and operation of such railroads or performed in the maintenance or construction of their equipment, or to the employes of such common carriers by railroad engaged therein, . . .: Provided, however, that common carriers by railroad engaged in such interstate or foreign commerce and in intrastate commerce shall, in all cases where liability does not exist under the laws of the United States, be liable in damages to any person suffering injury while employed by such carrier, or in case of the death of such employe, to his surviving wife and child, or children, and if no surviving wife or child or children, then to the parents, sisters, or minor brothers, residents of the United States at the time of such death, and who were dependent upon such deceased for support, to the same extent and subject to the same limitations as the liability now existing, or hereafter created, by the laws of the United States governing recoveries by railroad employes injured while engaged in interstate commerce: Provided, further, however, that if any interstate common carrier by railroad shall also be engaged in one or more intrastate enterprises or industries (including street railways and power plants) other than its railroad, the foregoing provisions of this section shall not exclude from the operation of the other sections of this act or bring under the foregoing proviso of this section any extrahazardous work of such other enterprise or industry, the payroll of which may be clearly separable and distinguishable from the payroll of the maintenance or operation of such railroad, or of the maintenance or construction of its equipment: . . . "

We understand respondent to contend that the provisos make it amenable to the industrial insurance act;

and that, since it is amenable to the act, and since it was, at the time of the collision, engaged in an extra-hazardous employment, it is entitled to immunity from liability in the present suit by virtue of the proviso of Rem. Rev. Stat., § 7675, above quoted—notwithstanding it was not a contributor to the accident fund.

We doubt that the provisos to Rem. Rev. Stat., § 7693, can be said in any sense to make respondent amenable to the industrial insurance act in its railroad operations. But assuming that they do, we think that respondent's argument overlooks one of the very fundamentals of what Judge Chadwick, in *State v. Mountain Timber Co.*, 75 Wash. 581, 135 Pac. 645, called "the *idea* of industrial insurance." It is that not only industries should bear the cost of industrial accidents in proportion to their inherent hazards, but that the individual employer should be taxed in accordance with the standard of safety maintained in his operations. The germ of the idea appeared in the original act (Laws 1911, chapter 74, § 4, p. 349), wherein it was provided:

"Insomuch as industry should bear the greater portion of the burden of the cost of its accidents, each employer shall, prior to January 15th of each year, pay into the state treasury, in accordance with the following schedule, a sum equal to a percentage of his total pay roll for that year, to-wit: (the same being deemed the most accurate method of equitable distribution of burden in proportion to relative hazard): . . ."

From time to time, the idea has developed, until in 1931 an elaborate plan was effected for computing rates of contribution to the "accident fund." (Laws 1931, chapter 104, § 1, p. 297.) The plan was designed to levy contribution at rates based largely upon the individual employer's "cost experience." This principle of adjusting the employer's rate of assessment by the measure of his own cost experience plainly in-

dicates that the basis for the immunity from suit afforded the employer by the act is made dependent upon his contribution to the accident fund. This view is fortified by Rem. Rev. Stat., § 7676 [P. C. § 3471], which specifically deprives an employer, who is in default in payment of premiums, of the benefits of the act, and subjects him to suit by an injured employee. And in such a suit, the employer may not interpose the defenses of negligence of fellow servant, contributory negligence, or assumption of risk.

In view of this section, an anomalous situation would be created by the logical application of respondent's contention: A defaulting employer would be subject to suit by his own employee, but, merely by reason of being engaged in extrahazardous employment, be immune from suit by a workman in the employ of someone else.

Construing the above quoted proviso of Rem. Rev. Stat., § 7675, in the light of the industrial insurance act as a whole, we think a workman, engaged in extrahazardous employment, is not precluded from maintaining an action for negligence against one not his employer, unless such a one is amenable to the act and a contributor to the "accident fund." Our conclusion finds support, at least by implication, in the decisions of this court in the cases of *Robinson v. McHugh*, 158 Wash. 157, 291 Pac. 330, and *Denning v. Quist*, 160 Wash. 681, 296 Pac. 145. In each case, the defendant (a third person employer) was held immune from suit under the proviso of Rem. Rev. Stat., § 7675. But in each opinion the fact is stressed that the defendant was a contributor to the "accident fund."

The judgment is reversed, and the cause remanded with directions to overrule the demurrer.

GERAGHTY and MILLARD, JJ., concur.

STEINERT, C. J. (concurring specially)—I concur in the result of the majority opinion, for the following reasons:

Respondent does not come within the immunity afforded by the proviso of Rem. Rev. Stat., § 7675 [P. C. § 3470], quoted by the majority, because at the time of the accident involved in this action respondent was not "in the course of any extra-hazardous employment under this act," meaning the workmen's compensation act.

Rem. Rev. Stat., § 7674 [P. C. § 3469], enumerates extrahazardous employments, but expressly limits them to such as "are within the legislative jurisdiction of the state." Whatever jurisdiction the legislature may have exercised formerly, under the provisions of the original act, Laws of 1911, chapter 74, § 18, p. 367, over railroads or common carriers by railroad doing "interstate, foreign and intrastate commerce," that jurisdiction was definitely disclaimed by the legislature in subsequent amendatory acts in which it was expressly stated that, for specific reasons, the provisions of the original act should not apply to work performed by the employees of such railroads or common carriers in the maintenance and operation thereof or performed in the maintenance or construction of their equipment, or to employees engaged therein. See Laws of 1917, chapter 28, § 19, p. 96; Laws of 1919, chapter 67, § 1, p. 134; Laws of 1925, Ex. Ses., chapter 84, § 1, p. 98; Rem. Rev. Stat., § 7693 [P. C. § 3486].

It is true that these amendatory acts, now appearing as Rem. Rev. Stat., § 7693, quoted in the majority opinion, contain three provisos in the nature of exceptions to the general provisions of that section, but none of these provisos afford respondent immunity from liability.

The first proviso positively creates a liability in

damages in favor of an employee of a common carrier by railroad engaged in interstate or foreign commerce and in intrastate commerce, in all cases where liability does not exist under the laws of the United States. The proviso has no relation to this case in any event, because appellant was not an employee of respondent.

The second proviso has reference to an interstate common carrier by railroad which shall also be engaged in one or more intrastate enterprises or industries *other than its railroad.* In such case, the act still applies to the intrastate enterprise or industry (other than its railroad), provided that the pay roll of such other enterprise or industry is clearly separable and distinguishable from the pay roll of the maintenance or operation of such railroad, or of the maintenance or construction of its equipment. In the case before us, the intrastate enterprise or industry in which the respondent was engaged at the time of the accident was not one *other than its railroad.*

The third proviso has relation to an independent contractor engaged in performing extrahazardous work for a common carrier by railroad. Manifestly, that proviso has no application here at all.

As Rem. Rev. Stat., § 7693, now stands, therefore, respondent is excluded from its operation and, consequently, from its protection, so far as the appellant is concerned.

Aside from what I have just said by way of concurrence in the result, I am not wholly in accord with the interpretation placed by the majority upon "the *idea* of industrial insurance."

The "idea," as expressed and developed in the act, and as interpreted by this court, contains an element which the majority overlooks, or, at least, does not include in its opinion. That element is one of cor-

relative sacrifices by the employer and employee in order that the act may have full play and accomplish its intended purpose. The thought is thus expressed in *State v. Mountain Timber Co.*, 75 Wash. 581, 583, 135 Pac. 645, on which the majority opinion relies:

"The legislature has adopted the *idea* of industrial insurance, and seen fit to make that idea a workable one by putting its execution, as well as its administrative features, in the hands of a commission. It has abolished rights of actions and defenses and in certain cases denied the right of trial by jury. The legislature has said to the man whose business is a dangerous one and the operation of which may bring injury to an employee, that he cannot do business without waiving certain rights and privileges heretofore enjoyed, and it has said to the employee that, inasmuch as he may become dependent upon the state, that he must give up his personal right of contract when about to engage in a hazardous occupation and contract with reference to the law. These demands are the fundamentals of our industrial insurance law. If the law is not administered as therein provided, it is not likely that a compulsory law such as it is could ever be adequately administered; for, aside from its humane purpose, it was adopted in order that the delay and frequent injustice incident to civil trials might be avoided."

The majority emphasizes the burden assumed by the employer to pay the cost of industrial insurance, but fails to note the correlative obligation on the part of the employee to

". . . give up his personal right of contract when about to engage in a hazardous occupation and contract with reference to the law."

Unless both features be recognized and maintained, the true intent of the act will not have been accomplished.

I make these obervations now, not because they affect the present decision, but rather to express what I

believe to be the true *"idea* of industrial insurance" as a workable system of compensation for those employed in extrahazardous occupation.

BEALS, J., concurs with STEINERT, C. J.