[No. 26968. Department One. February 21, 1938.]

CONRAD J. WEIFFENBACH, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

[1]Reported in 76 P. (2d) 589.

*Meier & Meagher* and *F. C. Kapp,* for appellant.

*A. C. Van Soelen* and *J. Ambler Newton,* for respondent.

GERAGHTY, J.—The plaintiff sued the defendant city to recover damages on account of severe injuries sustained by him through the city's negligence. The cause was tried to the court without a jury. The material facts may be epitomized as follows:

The plaintiff was employed by the Seattle Cornice Works in making estimates and surveys of buildings for repair. While engaged in measuring the roof of a building, he was permanently injured by a current of electricity conveyed by a metal tape measure used by him from a high voltage wire, part of the city's municipal light and power system. The wire was carried on poles along the city's streets. The building on which the plaintiff was employed abutted on the street.

One of the poles carrying the high voltage wire had leaned toward the building nearly four feet from a vertical position, causing the wire to sag down over the roof. One of the city's employees testified that the wire from which the charge was received cleared the building only eighteen inches, and was approximately even with the top of the chimney. The regulations of the city's light department provided that high voltage wires should clear the building six feet. Plaintiff was not able to say whether the tape touched the wire or became charged by electricity emanating from it. It seems that, under the conditions of atmosphere then existing, the current would emanate seven inches from the wire. The wires were not insulated.

The court found that, if entitled to recovery, the plaintiff's damages would be $36,545.55. It found that the plaintiff's injuries were the result of the defendant city's negligence and that he himself was free of any contributing negligence, but concluded that the defendant, in the maintenance of the high voltage wire, was engaged in an extrahazardous employment under the workmen's compensation act and was, by the terms of the act, exempt from suit by the plaintiff, who was himself engaged in extrahazardous work. A judgment was accordingly entered dismissing the plaintiff's action, and he appeals to this court.

The appellant states the sole issue in the case to be whether or not the respondent was, at the time of the accident, in the course of an extrahazardous employment under the workmen's compensation act in respect of the maintenance of the high voltage line causing the accident.

The issue is to be determined by the construction of the provisos embodied in the definition of "workman" contained in Rem. Rev. Stat., § 7675 [P. C. § 3470], reading as follows:

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: Provided, however, That if the injury to a workman is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, . . . Provided, however, That no action may be brought against any employer or any workman under this act as a third person *if at the time* of the accident such employer or such workman *was in the course* of any extra-hazardous employment under this act." (Italics ours.)

The history of the above provisions is detailed in *Robinson v. McHugh,* 158 Wash. 157, 291 Pac. 330, and *Denning v. Quist,* 160 Wash. 681, 296 Pac. 145. It is to be noted that the second proviso was not embodied in the workmen's compensation act until the legislative session of 1929. For the preceding eighteen years in which the act was in force, there was no exemption from action as a third party in favor of an employer or employee engaged in extrahazardous employment and not in the same employ with the injured workman.

The appellant contends that the respondent was not, at the time of the accident, an employer engaged "in the course of any extrahazardous employment"; that this phrase necessarily implies the presence of an employee doing some act at the time and place of the accident, together with an *active* participation on his part in the doing of some act; that a merely *passive* negligence, being a nondelegable act or condition on the part of an employer, such as, he contends, is found in this case, does not afford a basis for the exemption. He contends that the respondent was not, at the time of the accident, engaged in any employment that had anything to do with appellant's injuries; that it was doing no construction work on the line and had no employees actively engaged in any work who actually contributed in any manner in causing his injuries. It is contended that, by the use of the word "employment" instead of some other word, the legislature plainly had in mind that the action covered by the proviso must be one resulting directly from the relationship of employer and employee; and he urges that the word "employment" is not synonymous with "business" or "industry"; that, had these latter words been used, the question would have been quite a different one, and the legislature could easily have used them if that was its intention.

Now, an examination of the compensation act will disclose that the legislature did not always use the word "employment" in the restricted sense contended for, but that it is often used in a broader sense as synonymous with "industry," "work," "occupation," or "business."

In § 1 of the act (Laws of 1911, p. 345, Rem. Rev. Stat., § 7673 [P. C. § 3468]), the term "extrahazardous work" is used, and it is declared that, "the welfare of the state depends upon its *industries*."

Section 2 (Rem. Rev. Stat., § 7674 [P. C. § 3469]) is headed "Enumeration of Extra Hazardous Works," and recites:

"There is a hazard in all *employment*, but certain employments have come to be, and to be recognized as being inherently constantly dangerous. This act is intended to apply to all *such* inherently hazardous *works and occupations*, and it is the purpose to embrace all of them, which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term 'extrahazardous' wherever used in this act, to wit: . . ." (Italics ours.)

The section then enumerates the occupations and works covered by the act and specifically includes *electric light or power plants or lines*. Again, it is provided that the director of labor and industries, through the division of industrial insurance, shall have power, under certain enumerated conditions, to declare "any occupation or work to be extrahazardous" and under the act.

Section 4 (Rem. Rev. Stat., § 7676 [P. C. § 3471]), detailing a schedule of contribution, provides that:

"Inasmuch as *industry* should bear the greater portion of the burden of the cost of *its* accidents, each employer shall . . . pay," etc.

And, again:

"Every employer who shall enter into any *business*, or who shall resume operations in any *work* or *plant*

after the final adjustment of his payroll in connection therewith, shall . . . notify the director of labor and industries of such fact. . . ."

In Rem. Rev. Stat., §§ 7712, 7713, and 7713-1 [P. C. §§ 3501, 3502, 3514-11], relating to the establishment of the medical aid fund, the words "industry," "extrahazardous employment" and "extrahazardous work" are used to express the same idea. Thus, we see the words "employment," "industry," "occupation," "work," and "business," are used interchangeably in the act. A cursory examination of the numerous decisions of this court growing out of the compensation act will disclose that the words "business" and "occupation" are sometimes used in place of "employment." Standard dictionaries also give "employment" a secondary meaning synonymous with "business" and "occupation."

The appellant argues that, by reason of the fact that no employee of the respondent was present at the time, the accident was the result of a condition created by the respondent and not in the course of employment. The wire was an integral part of the respondent's electric system used in the transmission and distribution of its product. It was extrahazardous, defined so by the statute, and the respondent was required to, and did, pay into the industrial insurance fund of the state assessments levied upon its payroll as its ratable contribution for the protection not of its own employees alone, but of the whole body of employees of the state engaged in extrahazardous industry.

While no workman of the respondent was engaged in work on the high voltage line at the time and place of the accident, it is to be assumed that it had workmen, linemen, and others engaged in the maintenance and repair of its extensive distributing system, and that some of them were always employed somewhere on the system. The electricity itself, whether produced by

hydraulics or by steam, requires the continuous employment of workmen. The proviso exempts from suit employees as well as employers. Since the employee would be liable only where his negligence contributed to the injury, his presence would necessarily be involved, but a corporate employer cannot be present except through its servants or the instrumentalities it employs in the conduct of its business. That the respondent was present in this sense, is best evidenced by the injuries it inflicted upon appellant.

While, to the eye, the high voltage wire would seem a dead, inanimate thing, it was in fact a conductor for the transmission of one of the most deadly forces known to man. It was transmitting this force from the source of its generation to its ultimate destination as an instrumentality of the respondent in the conduct of its industry.

Assuming that an employer was engaged in transporting some product, as coal or ore, over a long stretch of tramway, in cars drawn by cables moving from a central plant, and that, in the operation, a workman in another extrahazardous employ was injured, could it be said that, as to this operation, the employer was not engaged in employment because no workman of the employer was, at the time, engaged in the operation outside the central plant? If the city had abandoned the use of the wire for the transmission of electricity so that it was no longer performing any function as a part of its operating system, then, of course, it would be a mere condition within the principle contended for by the appellant. It would be then no longer a part of the industry or the extrahazardous employment in which the respondent was engaged.

The immunity from a suit here involved must have been granted by the 1929 legislature as a reciprocal compensation to industry for the burden it assumes as

an aggregate unit in providing, in the language of the statute,

" . . . sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents . . . regardless of questions of fault. . . ."

The unfortunate appellant, by reason of the grievous injuries sustained by him, is entitled to receive from the industrial insurance fund the utmost that can be granted under the compensation act. This measure of relief may not, in this case, be the full measure of his damage, but the act does not purport to insure in all cases payment of the full measure of compensation that an injured workman might, at common law, recover after the hazards of a suit. While the relief granted under the act may sometimes be less, it is certain and sure in all cases, regardless of questions of fault.

Our conclusion is that the respondent, at the time and place of appellant's injury, was engaged in extrahazardous employment within the meaning of the quoted statutory provision, and, as such, was exempt from suit by the appellant, whose sole remedy is under the workmen's compensation act. The functions of the respondent city are numerous and varied. It is hardly necessary to say that the exemption accorded is limited to those of its activities falling within the purview of the compensation act.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and SIMPSON, JJ., concur.