**CALVIN v. WEST COAST POWER CO. et al.**

No. Civil 467.

District Court, D. Oregon.

March 16, 1942.

See also, D.C., 2 F.R.D. 248.

Gus L. Thacker, of Chehalis, Wash., for plaintiff.

James Arthur Powers, of Portland, Or., for defendant West Coast Power Co.

John Reilly, Maguire, Shields, Morrison & Biggs, and A. C. Spencer, Jr., all of Portland, Or., for defendant Alaska Junk Co.

JAMES ALGER FEE, District Judge.

This action is brought by the plaintiff to recover damages for the death of Aaron Calvin.[1] A pre-trial conference was held and a pre-trial order drafted, under which the court will now determine certain questions of fact and law. It is agreed between the parties that the West Coast Power Company[2] owned and maintained an electric transmission line in the State of Washington which crossed the right of way of an abandoned logging railroad, all of the materials and equipment of which, including railroad rolling stock and tracks, had

---

[1] Plaintiff's decedent, hereinafter referred to as "Calvin".

[2] West Coast Power Company, a corporation, hereinafter called the "power company".

been purchased by the Alaska Junk Company.[3] This company, which was a partnership, contracted with Emil Nyberg for the dismantling and removal of this machinery and equipment. Emil Nyberg and his partners, including Calvin, undertook this work under the contract above mentioned. On October 12, 1937, Calvin was engaged, pursuant to this contract, in moving a donkey engine, which had been loaded onto a freight car, over these tracks. He attempted to lift the transmission line of the power company which was uninsulated over the top of the boiler of the donkey engine and was electrocuted.

The important legal question of liability depends primarily upon the facts of the relationship of Calvin to the other parties and upon the facts of his employment. There was an agreement as to certain matters and evidence was introduced as to others. It was stipulated that at the time of the accident Calvin and the power company were respectively engaged in extra-hazardous work under the definitions contained in the Workmen's Compensation Act of the State of Washington.[4] It was agreed that Alaska had done nothing to bring that copartnership under the Act.

The contention of plaintiff is that this action can be brought against all defendants because Calvin was a "workman", as defined by the Act and yet he was not protected thereby. A subsidiary claim is that plaintiff is entitled to recover by virtue of a Washington statute relating to death by wrongful act, either adopted by the terms of the Act or irrespective thereof. Alaska contends that its partners were not the employers of Calvin, under the Act, but that he was engaged in the performance of a true independent contract. The power company claims that as it is agreed Calvin was a "workman" engaged in an extra-hazardous occupation, under the Act, and as the power company by virtue of the maintenance of its power line was also engaged in such an occupation,[5] no action could be maintained against it.

The Act is designed to afford "sure and certain relief" for workmen primarily engaged in "extra-hazardous" employments, therein enumerated, and to abolish resort to other methods of obtaining compensation for such industrial accidents.[6] Employers under the Act are required under penalty to submit payrolls to an administrative agency and to make payments at specified rates to the fund created thereunder. Benefits for injuries sustained while employed in extra-hazardous occupations are provided thereby[7] in accordance with a specified schedule.[8]

If Calvin was the employee of Alaska or Nyberg then his beneficiary would be entitled to be paid from the fund, even though the employer had not made reports or contributed thereto.[9] Further, if under these circumstances Alaska were thus in default, the beneficiary could elect to sue for death of Calvin by the wrongful act of that partnership. The defenses of contributory negligence, fault of fellow servant, and assumption of risk, would not be available to defendants in such an action. If Calvin had been the employee of Nyberg, then, certainly, if Nyberg were not in default, the beneficiary would be entitled to payment from the fund, or upon election, to bring action against Alaska and the power company, unless the party sued were engaged in extra-hazardous employment under the Act.

The salient question, then, is what was the status of Calvin with refer-

---

[3] H. J. Wolf, Sam Schnitzer, Jennie Schnitzer and Rosie Schnitzer, co-partners doing business under the firm name and style of Alaska Junk Co., a co-partnership, and H. J. Wolf, Mrs. H. J. Wolf, his wife, Sam Schnitzer and Mrs. Sam Schnitzer, his wife, each as a marital community and individually and as co-partners of the Alaska Junk Co., hereinafter called "Alaska".

[4] Remington's Revised Statutes of Washington, Title 50, Chapter 7, Section 7673 and following Sections, referred to as "the Act". The correct title is Workmen's Compensation Act, but the pre-trial order carries the designation Industrial Insurance Act.

[5] Weiffenbach v. Seattle, 193 Wash. 528, 532, 533, 76 P.2d 589.

[6] Remington's Revised Statutes of Washington, Title 50, Chapter 7, Section 7673.

[7] Remington's Revised Statutes of Washington, Title 50, Chapter 7, Section 7675.

[8] Remington's Revised Statutes of Washington, Title 50, Chapter 7, Section 7676.

[9] "Nor is the employee's right to compensation under the act dependent upon the employer's contribution to the fund. This is made certain by the act itself. Rem.Rev.Stat. §§ 7673, 7676." Samarzich v. Ætna Life Ins. Co., 180 Wash. 379, 383, 40 P.2d 129, 130.

ence to this Act. Under the evidence, the Court finds that Nyberg negotiated the contract with the idea of associating others with him as partners, and that he carried out that intention, by forming the group of which Calvin was one. The formation of a partnership depends upon the intention of the partners. This relation existed up to Calvin's death. It was not altered by the change of terms made by negotiation with representatives of Alaska.[10] Nothing herein indicates an intention to dissolve the partnership which the court has found was in existence. The whole negotiation for this change indicates that each of the Nyberg group had equal rights and authority. The court finds that the claim of the surviving associates that there was an entirely new contract is unfounded and the key testimony upon this feature, false. Nyberg and the persons whom he associated with him became independent contractors.[11] The essence of the contract was not the personal labor of Nyberg, Calvin or anyone else.[12] There was no subterfuge involved. It was a contract by which the manner and means of accomplishing the end were disregarded and the ultimate result alone was required.[13] This may be true, although the times, places and order of delivery of material were at the discretion of the owner of the property.[14] The independent control by Nyberg and his group, of detail and methods was not altered during the life of Calvin.

■■ A person who is himself an employer does not automatically obtain the benefits of the Act for his own protection.[15] But it is provided that any individ-

ual employer shall be entitled to the benefits thereof only if the administrative officials of the state shall have received "notice in writing of the fact that such employer is being carried upon the payroll prior to the date of the injury".[16] Each member of the Nyberg group was an employer within the meaning of the statute which provides " * * * employer means any person, body of persons, corporate or otherwise * * * all while engaged in this state in any extra-hazardous work".[17]

Calvin as a partner of the Nyberg group was an individual employer under these provisions. He was not automatically entitled to benefits thereunder. The requisite notice was not given to the state officers before the accident, although some payrolls were filed three months prior thereto. There was also an attempt at the instance of Alaska to remedy the defect afterward but this was of no avail. Therefore, he was no more entitled to benefits or subject to disabilities of this legislation than a person who was neither workman nor employer.

Although no formal claim was apparently filed, the Industrial Insurance Commissioner marked on the subsequent payrolls and returns of the Nyberg group a notation that if claim was filed for the death of Calvin, it should be rejected for the reason that deceased member employer of a partnership or corporation in default at the time of his injury and death is not entitled to the benefits of the Act.

This notation may not by reason of its informality be entitled to a presumption of validity usually accorded to administrative

---

10 The court assumes that Alaska was an employer under the Act. If it were not and Calvin were in the employ of that partnership he would not be a workman under the Act. Carsten v. Department of Labor & Industries, 172 Wash. 51, 53, 19 P.2d 133.

11 Machenheimer v. Department of Labor & Industries, 124 Wash. 259, 214 P. 17; Carsten v. Department of Labor & Industries, supra; Dalmasso v. Department of Labor & Industries, 181 Wash. 294, 43 P.2d 32. Cf. Norman v. Department of Labor & Industries, August 23, 1941, Wash., 116 P.2d 360.

12 Remington's Revised Statutes of Washington, Title 50, Chapter 7, Section 7674—1. A "workman" includes one "who is engaged in the employment of or who is working under an independent contract, the essence of which is his per-

sonal labor for any employer coming under this act whether by way of manual labor or otherwise * * *".

13 Lindbloom v. Department of Labor & Industries, 199 Wash. 487, 91 P.2d 1001; Fox & Co. v. State of Washington, 166 Wash. 510, 7 P.2d 961. Cf. Burchett v. Department of Labor & Industries, 146 Wash. 85, 261 P. 802, 263 P. 746.

14 Hubbard v. Department of Labor & Industries, 198 Wash. 354, 88 P.2d 423.

15 Farr v. Department of Labor & Industries, 125 Wash. 349, 216 P. 20.

16 Remington's Revised Statutes of Washington, Title 50, Chapter 7, Section 7675.

17 Remington's Revised Statutes of Washington, Title 50, Chapter 7, Section 7675.

action.[18] In any event, it is apparent that no payments will be made from the fund for the death of Calvin.

So far all parties are in agreement as to this feature. The power company indicates that Calvin and plaintiff beneficiary are deprived of benefits because of default of Calvin or his employer, since Calvin and the company were each engaged in extra-hazardous employment. It is also urged that Calvin was a "workman" under the Act, because the essence of the contract was his personal labor and, whether there was an independent contract with Nyberg and associates as partners or whether Calvin was under employment of another, still, the action cannot avail against a corporation engaged in "extra-hazardous" work under the Act, even if the "workman" is not protected by the fund.

If the defendants be considered they are in similar positions according to the interpretation of the facts above set out. Neither was the employer of Calvin. But if Calvin was a "workman" in the employ of Nyberg, his beneficiary would have the election "whether to take under this act"[19] or to bring suit against one or both the defendants.

 It is true a provision of the Act closely interwoven textually with the clauses giving right of suit against a third person reads: "Provided, however, That no action may be brought against any employer or any workman under this act *as a third person*[20] if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act." This proviso was added in order to grant "a reciprocal compensation to industry for the burden it assumes as an aggregate unit"[21] in providing protection to each "workman". But this does not mean that an employer who is not amenable to the Act or a contributor to the accident fund, even though

at the time engaged in extra-hazardous employment may not be sued by a "workman" employed by another.[22] Nor does it prevent suit by a "workman" in an extra-hazardous employment of another against one who carries on an extra-hazardous employment generally, but who in the particular act which caused the injury was not in the course of extra-hazardous employment.[23] Indeed, the rights of action conferred by this section are purely statutory and not common law rights of action.[24] The power company was entitled to no reciprocal compensation by way of immunity from suit by the beneficiary of Calvin if it be assumed plaintiff could receive no benefits under the Act.

The court has determined that Alaska was not the employer of Calvin. The action given by one clause of the Act to a workman against his own employer where the latter is in default in payments to the fund where certain defenses are barred is,[25] of course, not applicable. The action provided by the clause also is obviously one of statutory genesis and does not exist for those who are thereunder not entitled to take advantage of the provisions and benefits of the Act.

If the beneficiary could not recover from the fund, neither, then, could she exercise this election nor bring suit "under this Act" against either of defendants.

But the Act contains no provisions whatsoever penalizing a workman for default, either his own or that of his employer. It does contain express penalties against the employer who is in default. The punishment of an injured person for failure to comply with the extremely technical provisions of this Act or to supervise compliance therewith by his employer in his behalf would be a travesty. Here, plaintiff is not voluntarily accepting an option of suing the defendants instead of taking com-

---

[18] Hoff v. Department of Labor & Industries, 198 Wash. 257, 261, 88 P.2d 419; Zoff v. Department of Labor & Industries, 174 Wash. 585, 25 P.2d 972. No appeal was taken. See §§ 7674-7697, Remington's Revised Statutes of Washington, Title 50, Chapter 7, and Mud Bay Logging Co. v. Department of Labor & Industries, 193 Wash. 275, 75 P.2d 579.

[19] See § 7675, Remington's Revised Statutes of Washington, Title 50, Chapter 7.

[20] Emphasis supplied.

[21] Weiffenbach v. Seattle, supra 193 Wash. page 534, 76 P.2d page 591.

[22] O'Brien v. Northern Pacific Ry. Co., 192 Wash. 55, 72 P.2d 602.

[23] Pryor v. Safeway Stores, 196 Wash. 382, 83 P.2d 241, 85 P.2d 1045.

[24] Denning v. Quist, 172 Wash. 83, 19 P.2d 656; Long v. Thompson, 177 Wash. 296, 31 P.2d 908; Reeder v. Crewes, 199 Wash. 40, 90 P.2d 267.

[25] Section 7676, Remington's Revised Statutes of Washington, Title 50, Chapter 7.

pensation from the fund.[26] If she cannot recover here, all remedies are denied.

The Supreme Court of Washington has not only adopted the view that it would be a denial of justice to refuse a remedy in such a contingency,[27] but, further, has intimated that it would be violation of the Federal Constitution to curtail the rights and remedies of an injured workman by a statute which gave no counterbalancing relief.[28] This dictum is accepted as a guide to future interpretation of the statute by the courts of the State.

Logically, then, an action brought by one whose employer or who himself is in default under the Act and who, because of the default, cannot recover the benefits thereof, is not barred. The result is that the plaintiff has the rights and only those which existed between two persons not engaged in employment at the time of the accident and without reference to the Act. Therefore, plaintiff is entitled to maintain an action under the Washington statute relating to death by wrongful act, subject to the special conditions provided by statutes such as the naming of beneficiaries and subject only to the ordinary defenses.

Alaska contends that there is a limitation of two years upon this type of action in Oregon and, therefore, this proceeding is barred.[29] Under Washington law the action for death in that state[30] could be brought within three years.[31] The power company which is not a resident of either state does not raise this objection. This court must attempt to discover in this situation what the Supreme Court of Oregon would hold when these exact facts are presented for decision. No case has been called to the attention of this court where such facts have been ruled upon by any tribunal sitting in Oregon. The general rule unquestionably is that a limitation established by the legislature of the state where the cause is tried should be applied, but the legislature of Oregon has provided that where the right of action has arisen in Washington between non-residents of Oregon an action cannot be entertained by a court here after it is barred by the lapse of time established as a bar in Washington.[32]

From this provision a disposition upon the part of the legislature of Oregon to permit the statute of limitation of the state where the cause of action arose to be applied between non-residents of Oregon might be implied. The exact point has never been decided by the Oregon courts.

It is especially worthy of note that at the time the instant action was commenced it could have been maintained in Washington against all defendants but service could not be obtained upon the Alaska partners there. Their presence for the purpose of service was the vital factor in the institution of action in this court.

Actions for death by wrongful act are sui generis.[33] The action was not permitted at common law[34] but was created in practically all American jurisdictions by statute. Normally speaking, these statutes which gave the new right contained limitations of time of suit and amount of recovery.[35] Each state enacted its statute to establish liability for death by wrongful act within its own boundaries.[36] Each state thus established such limitations for a right which it gave for an occurrence inside and not outside the state. Logically, however, no state which had passed such a statute could refuse permission to one to maintain action upon a death in another state where the latter state had given the substantive right of action.[37] It was early held and it is still the law that when the

[26] See Reeder v. Crewes, supra, 199 Wash. page 45, 90 P.2d 267.

[27] Arthun v. Seattle, 137 Wash. 228, 242 P. 16.

[28] Reeder v. Crewes, supra.

[29] See Section 8-903, Oregon Compiled Laws Annotated.

[30] Sections 183, 183—1, 183—2 and 183—3, Remington's Compiled Statutes of Washington.

[31] Section 159, subd. 2, Remington's Compiled Statutes of Washington.

[32] Section 1-224, Oregon Compiled Laws Annotated.

[33] All follow in their essential characteristics the first act of the type which is known as Lord Campbell's Act, whereby action for damages for death caused by wrongful act was first given in England in 1846. St. 9 & 10, Vict. C. 93.

[34] St. Louis, I. M. & S. Railway Co. v. Craft, 237 U.S. 648, 35 S.Ct. 704, 59 L. Ed. 1160; Boyd v. Clark, C.C.E.D.Mich., 8 F. 849.

[35] See Note 67 A.L.R. 1070.

[36] Negaubauer v. Great Northern R. Co., 92 Minn. 184, 99 N.W. 620, 104 Am. St.Rep. 674, 2 Ann.Cas. 150.

[37] The comity between the states requires this result. Theroux v. Northern Pacific R. Co., 8 Cir., 64 F. 84, 85, citing Northern Pacific Railroad Co. v.

state where the death occurred placed a limitation upon the time within which action could be brought, such action could not be maintained in another state after the designated time expired even though the latter state would have permitted an action for death by wrongful act which had occurred within its boundaries to be maintained for a much longer time.[38] When, however, the state where death occurred had withdrawn the specific limitation and only controlled the bringing of action thereon by provisions generally applicable, an action for death by wrongful act could be brought in another state provided the time limited by the latter for recovery for death had not expired.[39]

But when the doctrine of these decisions was logically extended to allow action to be brought all during the time when it could have been maintained in the state of origin of the right of action, even though the jurisdiction wherein the court was held had limited action for death within its own boundaries to a lesser time, a cleavage of authority occurred.[40] Text writers and theorists indicate the doctrine that the limitation of the forum must be applied because the symmetry of the legal structure is thus maintained.[41] But if the right is given and is cut off when the state which conferred it designates, then, length of time is as much of substantive law as is the right of action itself. The recognition of a right of action entirely unknown at common law is a much more difficult process than the recognition of its existence for the specific period permitted by the state of origin.[42]

The Oregon statute enacted in 1862 extending a new right of action for death by wrongful act contains this sentence: "Such action shall be commenced within two years after the death, and damages therein shall not exceed $5,000."[43] The money limitation has now been raised to $10,000.[44] It is obvious that these were conditions upon an action for death by wrongful act which took place in Oregon.[45] No other state was in contemplation when this provision was enacted. There is, then, no applicable statute in Oregon relating to death by wrongful act in Washington. There is thus no limitation or condition upon such a right unless it be synthetically[46] applied or imported from the State of Washington. The three-year limitation of the Washington law was

Babcock, 154 U.S. 190, 14 S.Ct. 978, 38 L.Ed. 958. It is there pointed out that nearly every state had even then adopted death by wrongful act.

[38] The Harrisburg, 119 U.S. 119, 7 S. Ct. 140, 30 L.Ed. 358; Parmele's Wharton Conflict of Laws, § 540b. See Note 68 A.L.R. 217.

[39] Gregory v. Southern Pacific Co., D. C.Or., 157 F. 113.

[40] Theroux v. Northern Pacific R. Co., supra; Negaubauer v. Great Northern R. Co., supra; Keep v. National Tube Co., C.C.N.J., 154 F. 121; Coffman v. Wood, D.C., 5 F.Supp. 906.

Contra, Rosenzweig v. Heller, 302 Pa. 279, 153 A. 346; Tieffenbrun v. Flannery, 198 N.C. 397, 151 S.E. 857, 68 A. L.R. 210; Cauley v. S. E. Massengill Co., D.C., 35 F.Supp. 371.

[41] Special recognition is not given to the fact that actions for death by wrongful act are unique in history and policy. 3 Beale, Conflict of Laws, 1627; 2 Wharton, Conflict of Laws, § 549b; 1 Wood, Limitations, 65; Restatement, Conflict of Laws §§ 387, 603, 605; Note 46 L.R.A., N.S., 687; Note 68 A.L.R. 217.

[42] The same conflict exists in regard to other statutes creating rights of action but none of these stand upon the same basis as the enactments relating to death by wrongful act. Brunswick Terminal Co. v. National Bank of Baltimore, 4 Cir., 99 F. 635, 48 L.R.A. 625. See Engel v. Davenport, 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813; contra, White v. Govatos, 1 Terry 349, 40 Del. 349, 10 A.2d 524.

[43] Section 367, General Laws of Oregon, 1862.

[44] Section 8-903, Oregon Compiled Laws Annotated.

[45] The history of the adoption of this statute by the various states indicates that the position taken in the Negaubauer case is applicable generally.

[46] This operation is successfully accomplished as to the North Carolina statute in Tieffenbrun v. Flannery, supra, 198 N. C. page 404, 151 S.E. page 861, 68 A.L. R. 210, by the phrase "All statutes of limitations are essentially time clocks, and while C.S. § 160, has been construed as a condition annexed to the cause of action, it is also a time limit to the procedure". This appears to go a long way to work out a result. Until the Supreme Court of Oregon specifically so construes the Oregon statute, this court will not adopt the process. It is assumed no other statute is applicable except a ten-year limitation contained in Oregon Compiled Laws Annotated Section 1-209.

incorporated in the Civil Code of that state, together with the statute permitting action for death by wrongful act,[47] and, thus, these sections may be considered part of the same enactment.

■ However, it should be applicable even if not a condition to the right. The *Oregon* statute, which has no bearing upon the occurrence or the right of action, should not be applied because of any implication that it expresses the public policy of the state. As above noted the legislature had indicated an intention to permit the Washington statutes to be applied between non-residents of Oregon for acts occurring within the former state.[48] The Washington statute makes provision for the existence of a right of action only for the benefit of certain classes of beneficiaries. These are also conditions of the right and would be enforced by the Oregon courts. The Oregon statute has no effect upon the maintenance of suit in this state except that its passage shows that public policy is not adverse to this type of action.[49]

It seems anomalous that action for the identical death by wrongful act can be maintained against the non-resident defendants in Washington and probably in Oregon[50] and that at the same time an Oregon statute which does not specifically apply should be erected by this court as a bar to the maintenance of the action against a resident of Oregon. The federal court sitting in Washington would be bound to recognize the right of action if service could have been obtained there, when it was in this state, upon the partners of Alaska. Impelled by like considerations, a distinguished judge of the United States court in a similar situation applied the law of the place of death, notwithstanding that the provisions of the statutes of the state where the action was brought would have barred the maintenance of an action for death in that jurisdiction.[51]

It is probable the Supreme Court of Oregon which has indicated a tendency to practical justice will not deny one injured by the death of a principal in another state access to this court while the right of action is alive in the jurisdiction of its origin. Especially is this true where residents of Oregon have prevented service by remaining out of Washington.

Further pre-trial conference and trial may follow at convenience of the parties.

---

[47] The Washington statute giving a right of action based upon death by wrongful act was § 8 of Chapter I of the Code of Civil Procedure of that state, adopted in 1881. The limitation was contained in § 28 of Chapter II of the same Code.

[48] Section 1-224, Oregon Compiled Laws Annotated.

[49] See Loucks v. Standard Oil Co., 224 N. Y. 99, 120 N.E. 198; Atchison, Topeka & Santa Fe Railway Co. v. Nichols, 264 U.S. 348, 44 S.Ct. 353, 68 L.Ed. 720. Where the right of action asserted is held to be based upon the local statute, the result might logically be otherwise. See Tieffenbrun v. Flannery, supra.

[50] It is held in a state which has such a statute that when the cause of action is not barred in the state where the action originated it is not barred in the state where the court is held if between residents of the former. Gibson v. Womack, 218 Ky. 626, 291 S.W. 1021, 51 A.L.R. 773.

[51] Theroux v. Northern Pacific R. Co., supra; Coffman v. Wood, supra.