**No. 3744**

**Second Circuit**

——

**KROUSEL v. THIEME ET AL.**

——

(June 2, 1930. Opinion and Decree.)

——

E. L. Walker, of Ruston, and John J. Peters, of Winnfield, attorneys for plaintiff, appellee.

Cas Moss, of Winnfield, attorney for defendants, appellants.

DREW, J. Plaintiff and appellee, Richard Krousel, brought this suit against defendants, Max Thieme and L. A. Nugent, for judgment, individually and in solido, for the sum of $196.47, together with 5 per cent per annum interest thereon from date of judicial demand, till paid, for damages sustained by reason of a collision between the automobiles of plaintiff and defendants, and the amount sued for is represented by the items of actual damage suffered to plaintiff's car by reason thereof.

Plaintiff, appellee herein, alleges that Max Thieme on and prior to the date of the collision, December 21, 1928, owned and conducted in the town of Winnfield, a Chevrolet automobile agency under the name of "Max Thieme Chevrolet Company," and, in the conduct and operation of such business, employed automobile salesmen charged with the duty of covering the territory in and about Winnfield for the purpose of demonstrating and selling automobiles, and that the defendant, L. A. Nugent, was so employed. That Nugent did not have any fixed or regular hours in which to begin or quit work, but was at liberty to and did, with the knowledge and consent of Max Thieme, work under said employment during such time and hours as said Nugent saw fit and whenever and wherever he could find a prospect or customer.

That on December 21, 1928, at about 6:20 p. m., while petitioner was returning from Baton Rouge, in his Buick sedan, he met L. A. Nugent, who was going south on the main public highway between Winnfield and Alexandria, and at a point just over in the parish of Grant; that Nugent was driving a Chevrolet automobile (Chevrolet roadster) belonging to Max Thieme, and was performing duties arising out of and incidental to his employment, within the scope of his employer's business; that petitioner discovering that said Nugent was drunk, and, before meeting him, stopped his automobile on the right side of the road, as near the edge thereof as he safely could, but, notwithstanding this precaution, said Nugent ran his car into petitioner's said automobile and damaged it in the amount sued for, and as shown by itemized bills attached to petition. That plaintiff was in no sense to blame or at fault, and the accident and resulting damage to petitioner's

car was caused solely by the excessive speed, carelessness, and negligent driving of said Nugent at the time, and his drunken condition.

The defendants filed separate answers, which urge the same defenses, with the exception that the answer of Max Thieme sues in reconvention for $350 alleged damages sustained by defendant's automobile.

The answers deny that Nugent was on duty at the time of the accident; deny that he was drunk; and aver that all damages sustained by plaintiff were caused solely by plaintiff's negligence and carelessness in traveling at an excessive rate of speed of 50 or 60 miles per hour, driving on the left-hand side of the road, and operating his car with bright and glaring lights. Contributory negligence is pleaded and that defendant, Nugent, was on the right-hand side of the road and was operating his car at a moderate rate of speed.

The lower court rendered judgment in favor of the plaintiff and against the defendants in solido for the amount prayed for, and rejected the reconventional demand of the defendant, Max Thieme. Judgment was rendered against the defendant, L. A. Nugent, the driver of the car, the court holding that he was at the time of the accident acting within the scope of his employment and still on duty. From the judgment the defendant, Max Thieme, has appealed.

The most serious question in the case is whether or not Nugent was at the time of the accident performing duties arising out of and incidental to his employment. Was he still on duty? The evidence shows that Nugent was employed by his co-defendant, Thieme, as a car salesman, and that Thieme required him to report at the place of business at 8 o'clock in the morning and to remain on duty until at least 5 o'clock in the afternoon, and that on the day of the accident Nugent had checked out of the garage of defendant, Thieme, and was on his way home. He lived in Rochelle, La., in Grant parish. Thieme's place of business was in the town of Winnfield, in Winn parish. At the time of the accident, Nugent was driving a car owned by Thieme, and was in the habit of being furnished with a car by Thieme to go to and from his home. He testified that he was driving a used car that had a price of $450 on it, and that he would have sold it to any one who wanted it; that if he had made a sale after he left Thieme's place of business he would get his commission the same as if he had sold it while there; that his duties required him to go wherever there was a "prospect"; and that if he had the opportunity to sell a car at night he would do so and would receive his commission.

Thieme testified that Nugent had the right to sell cars wherever and whenever he could. It is common knowledge that an automobile salesman, working on commission, has authority to sell cars wherever and whenever he can, whether it be night or day. Nugent was driving a car owned by Thieme with authority to sell it if he could, for the price of $450 placed on it by Thieme. He testified that he would have sold it if he had found a purchaser. He traveled from his home in Rochelle, La., to Winnfield, La., and back each day in a car owned by Thieme. We are convinced that Nugent was at the time of the accident as much in the employ of Thieme as he was at any time during the day and that he was acting within the scope of his employment, and that whatever judgment is rendered against Nugent should also be rendered against Thieme..

Nugent did not appeal from the judgment of the lower court, and therefore is not before us.

The evidence in the case is conflicting. There is very strong evidence that Nugent was at least drinking at the time of the accident, if not drunk. The strongest witness for the defendants, Mr. Pete Hawthorn, who rode in the same car and on the same seat with Nugent from Rochelle to the scene of the accident, was not willing to swear that Nugent was not drinking. This court cannot say that Nugent was drunk or under the influence of whisky sufficient to mar his driving, and it is not necessary to reach a decision in the case.

Most of the witnesses in the case are honorable men, including the sheriff of Winn parish, the mayor of Winnfield, and the deputy sheriff of Grant parish, and it is strange indeed that their testimony should be so conflicting. Those who testify for plaintiff, together with plaintiff and his wife, say that plaintiff's car was on the extreme right-hand side of the road, and that it did not move after being struck by defendant's car; that the left front wheel was broken down and that it did not move more than a few inches after being struck. On the other hand, the witnesses for defendants are just as positive that the cars met in the center of the road and that plaintiff's car moved 20 feet or more to the right after being hit; that the broken spokes were in the center of the road, and that it was plainly visible where the broken wheel had been dragged across the road. Several eye-witnesses, who were at a filling station about 100 yards below the place of the accident, say that plaintiff had not stopped his car, and was traveling at a rapid rate of speed, and was in the middle of the road when his car was struck. The lower court undoubtedly did not give much credence to the testimony of the witnesses at the filling station. It was about dark and the road was dusty and no doubt it would have been difficult for them to have seen much of the accident. The accident happened about 20 steps after plaintiff had crossed a one-way bridge. It was necessary for him to have been in the center of the road to cross this bridge, and if he had pulled to the extreme right of the road before the accident it would have been necessary for him to have been traveling very slow and to have pulled to the right immediately after coming off the bridge. However, we think that immaterial to the case. If he was on the right of the center of the road, he was within his legal rights. Defendant, Thieme, complains that plaintiff was burning bright lights on his car and that they more or less blinded Nugent. Nugent traveled this road at least twice a day, going to and from his work, and knew of this one-way bridge, and knew that one crossing it necessarily had to be in the center of the road, and it was his duty, when he saw plaintiff about to cross the bridge, to have pulled to his extreme right-hand side of the road, and if the lights on plaintiff's car were strong enough to blind him, he should have pulled to his right on the road and stopped; but instead of complying with what was his plain duty, he continued on down the road at the same rate of speed he had been traveling, and we are convinced, as the lower court was, that he ran into plaintiff's car. Alston vs. Cooley, 5 La. App. 623.

The position of the cars after the accident corroborates, to a great extent, the testimony of plaintiff and his witnesses. The case involves purely a question of fact, and the veracity of the witnesses would necessarily have a good deal to do with the finding. The lower court found for the plaintiff, and unless we find his judgment manifestly wrong we will not disturb it. In this case we cannot say that it is.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.