[No. 24908. Department One. March 8, 1934.]

J. L. SMITH, *Respondent*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Browder Brown, Assist-
ant,* for appellant.

*Vanderveer & Bassett,* for respondent.

MITCHELL, J.—Respondent, J. L. Smith, sustained
an injury while engaged as an employee in an extra-
hazardous occupation. His claim for compensation

[1]Reported in 30 P. (2d) 656.

was recognized and allowed by the department of labor and industries, and thereafter the disability was classified as a permanent partial one of nine degrees. He, being dissatisfied, applied to the joint board of the department of labor and industries for a rehearing. The application was granted. Thereafter, on January 29, 1931, evidence was taken in the cause.

While the cause was thus pending before the joint board, an instrument, purporting to be an arbitration agreement with respect to the extent of the disability suffered by the claimant, was signed by him and the department of labor and industries, by the terms of which arbitrators were chosen in the usual manner to make an examination and decision and file and serve its finding and award. Thereafter, the arbitrators filed an unverified report in the department, finding claimant's permanent partial disability was 5¾ per cent. Thereafter, the joint board considered the claim upon the proofs on file, "together with transcript of testimony taken on the hearing January 29, 1932," and on the unverified report of the arbitrators, upon which an order was entered making a small further award for permanent partial disability of the claimant. The claimant objected to the third arbitrator and the report for reasons now unimportant.

The claimant, being dissatisfied, appealed to the superior court, where, upon a hearing, without additional testimony, the trial court entered findings, conclusions and judgment still further increasing the degree and award on account of permanent partial disability of the claimant to eighteen degrees, upon which he had already received a part payment of $62.10. The department of labor and industries has appealed.

The first assignment is that the court erred in

refusing to hold that the claimant was bound by the arbitration agreement. In disposing of this assignment, we do not feel called upon to discuss or decide the question of the power of the department to arbitrate such matter at all. It is enough to say that, because of Rem. Rev. Stat., § 420 *et seq.,* common law arbitration does not exist in this state. *Dickie Mfg. Co. v. Sound Const. & Eng. Co.,* 92 Wash. 316, 159 Pac. 129. Nor can it be said that the written agreement and report in this case constitute a statutory arbitration, for the reason that it does not provide for nor is there any proof that the arbitrators were sworn, nor does it provide, nor is it a fact, that any award, together with a written agreement, was sealed up and delivered to anyone; nor was it delivered by anyone to the clerk of the superior court of the county wherein the arbitration was held. Rem. Rev. Stat., § 422.

 Nor can the report of the arbitrators be received for any purpose, because § 7697 provides that

". . . such rehearing [before the joint board] shall be de novo and summary, but no witness' testimony shall be received unless he shall first have been sworn to testify the truth, . . . or unless his testimony shall have been taken by deposition . . ."

[3] The next assignments are that the court erred in findings Nos. 2 and 3 to the effect that the claimant's eye trouble causes him to have double vision due to a partial paralysis of the right superior rectus muscle, which resulted from his injury, causing "a permanent partial disability of 18 degrees."

The claimant testified to the accident, that he was injured in the back of his head, since which time he has suffered in his head, and that he never had any trouble with his vision before. He testified:

"A. Well, I have got double vision. Q. When do you have double vision? A. I got double vision all the time to the left, every way and every shape, and when I look up I got it all the way around. Q. That is whether you are looking to the right or to the left? A. Yes. Then when I am looking down I have got double vision."

Dr. Harry V. Wurdemann, an eye specialist, testified that he personally examined the claimant after the accident; that:

"Looking straight ahead there is 6 degrees esophoria but no double vision within an angle of about 25 degrees up, 20 degrees down and none looking directly to the right, but double vision begins at about 15 degrees looking to the left. The right eye does not fully follow the left looking upwards. This condition is apparently due to partial paralysis of the right superior rectus muscle."

He further testified that, in his opinion, the double vision was caused by a trauma. Upon being asked concerning the degree of disability, he testified:

"It is a 30% disability but on his vocational rating according to the schedule of disability ratings of the U. S. Veterans Bureau it is 27%. Q. Doctor, I will ask you apart from the schedule of disability ratings of the U. S. Veterans Bureau if you can tell us to what extent this man's vision has been economically impaired taking 100% as normal—for all purposes. A. 30% in ordinary occupations. Q. As I understand you the condition is incurable? A. In my opinion it is incurable."

These two were the only witnesses sworn and examined upon the rehearing. Their testimony, as we view it, overcomes the *prima facie* correctness of the finding and order of the department and sustains the findings, conclusions and judgment of the trial court.

By one other assignment, it is claimed the at-

torney's fee allowed the claimant by the trial court is unreasonable. The assignment has not been argued, either in the brief or orally, and we treat it as abandoned.

Affirmed.

MAIN, MILLARD, and STEINERT, JJ., concur.

BEALS, C. J., concurs in the result.