[No. 26875.   Department Two.   October 4, 1938.]

J. M. PRYOR, *Respondent*, v. SAFEWAY STORES, INC., *et al., Appellants.*[1]

[1]Reported in 83 P. (2d) 241; 85 P. (2d) 1045.

*Roberts & Skeel* and *W. R. McKelvy,* for appellants Safeway Stores, Inc., *et al.*

*Evans, McLaren & Littell,* for appellant Marion.

*Smith & Matthews* and *Beverly S. Wilkerson,* for respondent.

*The Attorney General* and *Browder Brown, Assistant, amici curiae.*

BLAKE, J.—Plaintiff brought this action to recover damages for personal injuries sustained as the result of a collision between motor vehicles on a public highway. From judgment entered upon a verdict in favor of plaintiff, defendants appeal.

While it does not seem to us there is any dispute in the controlling facts in the case, we shall endeavor to state them in the light most favorable to appellants. The collision occurred on the Marysville-Tulalip highway, at a point about fifty feet east of its intersection with a gravel road extending to the south. Respondent, operating a road sweeper, was driving east on the south side of the highway, at a rate of speed of from four to six miles an hour. The appellant Marion

was driving a delivery truck belonging to appellants Safeway Stores, Inc., and Western States Grocery, going in the same direction.

When about a quarter of a mile from the point of collision, Marion observed a cloud of dust covering the southerly three-fourths of the highway. He testified that he thought it was raised by a car turning off to the south on the gravel road. Driving at a rate of thirty miles an hour, he drove into the cloud of dust. Then, seeing the sweeper, he started to pass it to the left. At that moment, he observed a car, coming from the east, just about opposite the sweeper. He swerved back to the south side of the highway and ran into the rear end of the sweeper.

Respondent, at the time, was in the course of an extrahazardous employment. His employer, Washington Asphalt Company, was operating under the compulsory provisions of the industrial insurance act and had paid premiums on account of respondent's services. So respondent had a right to claim compensation under that act.

Appellant Marion was also in the course of his employment. But his employment was not extrahazardous. *Edwards v. Department of Labor & Industries,* 146 Wash. 266, 262 Pac. 973. He and Western States Grocery Company and Safeway Stores, Inc., however, had brought themselves under the industrial insurance act by elective adoption, and the latter company had paid premiums on account of Marion's services.

Upon these facts, the court held that respondent was not bound to accept compensation under the industrial insurance act. The jury were instructed that appellants were negligent as a matter of law, and that respondent was free from contributory negligence—thus

leaving for the jury's determination the amount of damages only. The verdict was for $18,500.

Appellants' assignments of error raise four principal questions: (1) The right of respondent to elect to maintain an action for damages against them; (2) the holding, as a matter of law, that appellants were chargeable with negligence; (3) the holding, as a matter of law, that respondent was free from contributory negligence; (4) excessiveness of the verdict.

█ *First:* Appellants contend that, having brought themselves under the industrial insurance act, by elective adoption, they are entitled to all the benefits of the act. Of this there can be no doubt. For the act (Rem. Rev. Stat., § 7696 [P. C. § 3487]) provides that employers and employees who have brought themselves under the act, in the manner designated in that section, shall be "entitled to all of the benefits and all of the liabilities" of the act. The question now presented is whether, under the facts disclosed by this record, immunity from liability for negligently injuring the employee of another employer is a benefit to which appellants are entitled under the act.

In our opinion, the answer is found in the terms of the act itself. In the original industrial insurance act (Laws 1911, chapter 74, p. 345), it was provided in § 3, p. 346, that, if a workman, while away from the plant of his employer, sustained injuries through negligence of one not in the same employ, he could elect to take under the act, or sue the person causing his injuries. This right was preserved, with the limitation indicated, until 1927. The section was then amended (Laws 1927, chapter 310, § 2, p. 815) so as to give the workman the right of election, without the limitation that the injury be sustained away from the plant of the employer. In other words, one, not in the

same employ, who negligently injured a workman, was liable in an action for damages, at the election of the workman.

In 1929, the section was again amended. Laws of 1929, chapter 132, § 1, p. 325 (Rem. Rev. Stat., § 7675 [P. C. § 3470]). That amendment preserves the workman's right to elect, in the following language:

" . . . That if the injury to a workman is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other,"

but limits the right to maintain an action for negligence, as follows:

"Provided, however, That no action may be brought against any employer or any workman under this act as a third person *if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act . . .*" (Italics ours.)

Plainly, under this limitation, an employer under the act, either under the compulsory or elective provisions, is immune from an action in damages for negligent injury of a workman not in his employ only when, *"at the time of the accident,"* such employer is engaged in *"extra-hazardous employment."*

Since, at the time of the collision, the appellants were not engaged in extrahazardous employment, respondent had the right to elect whether he would take compensation under the industrial insurance act or maintain this action for negligence against appellants.

▊ Appellants argue at much length that, in construing the statute, the court should accept the interpretation placed upon it by the department of labor and industries. They insist that the department has so construed the statute as to afford to them immunity

from the present suit. We do not so understand the evidence. As we read the evidence, the department has never been called upon to construe the right of a workman to elect whether to take under the act or sue a third party employer who is under the act. But, assuming that the department has construed the section as argued by appellants, we cannot accept its interpretation or practice. For the rule is that the interpretation of a statute by executive or administrative officers, in contravention of its plain terms, will not be followed by the courts. *Wendt v. Industrial Ins. Commission,* 80 Wash. 111, 141 Pac. 311; *State ex rel. Sherman v. Benson,* 111 Wash. 124, 189 Pac. 1000; *State v. Davies,* 176 Wash. 100, 28 P. (2d) 322.

■ *Second:* As we have observed, the court instructed the jury that appellants were chargeable with negligence as a matter of law. The instruction was correct, under the rule laid down in *Trainor v. Interstate Const. Co.,* 187 Wash. 142, 60 P. (2d) 7. In that case, we held one guilty of contributory negligence as a matter of law, who failed to stop where visibility was completely obscured by a cloud of dust created by a steam shovel in road construction work.

· ■ Appellants, nevertheless, insist that they were entitled to go to the jury on the question of negligence, under instructions exonerating them from liability if Marion acted with reasonable prudence in the face of the emergency which confronted him by the presence of the car coming from the east. The doctrine of excusable conduct in the face of sudden peril, however, cannot be invoked by one whose negligence is responsible for the perilous situation. 1 Shearman & Redfield on Negligence (6th ed.), 205, § 85a; *Schneider v. Second Ave. R. Co.,* 133 N. Y. 583, 30 N. E. 752; *Allen v. Schultz,* 107 Wash. 393, 181 Pac. 916, 6 A. L. R. 676;

*Shirley v. American Automobile Ins. Co.,* 163 Wash. 136, 300 Pac. 155. In *Allen v. Schultz, supra,* the doctrine and its application is stated as follows:

"It is probably the general rule that one confronted with a sudden peril, not arising from any fault of his own, may, to avoid bodily harm to himself, act in the way the emergency seems to require without being guilty of negligence, even though in so acting he injures another who in no way contributed to the condition creating the peril. This seems to be the holding in the case of *Donahue v. Kelly,* 181 Pa. St. 93, 37 Atl. 186, 59 Am. St. 632, and is perhaps the corollary of the rule illustrated by the two shipwrecked mariners on the plank. The act, however, is not one which the law commends, and before it will be given application, it must be clear that an emergency existed, that it was brought about by no negligent act of the person in the perilous situation, and that the resultant injury to the second person could not be prevented after the peril had passed."

■ *Third:* Appellants' contention that the question of contributory negligence was for the jury is based upon evidence to the effect that no warning signs were set up along the road to indicate the presence of workmen or road equipment. We cannot find any evidence from which it could be inferred that there was any duty on the part of respondent to set up such signs. If the absence of such signs should be held to be negligence, such negligence could not be charged to respondent. But in any event, we are of the view that, under the facts disclosed by this record, the court was warranted in holding, as a matter of law, that the absence of such signs did not in any appreciable degree contribute to respondent's injuries.

■ At this point, it may be well to refer to an assignment of error directed to the refusal of the trial court to permit proof of a statement made by the timekeeper of respondent's employer, to the effect that they

had had trouble before with that kind of equipment; that they had had accidents before with it. These statements were made at the scene of the accident shortly after it occurred. Appellants contend that the statements were admissible as part of the *res gestae*. Assuming, without deciding, that proof of the statements was admissible, we do not think that they tended to prove contributory negligence on the part of respondent. There is no inference to be drawn that he knew of such trouble or prior accidents. The only legitimate inference from these statements would be that respondent's employer was guilty of negligence in using the equipment. This, of course, would not excuse Marion's negligence.

*Fourth:* The verdict is large, but in our opinion, not excessive. There is no conflict in the evidence as to the extent of respondent's injuries. He sustained a fracture of the second cervical vertebra, from which have resulted limitation of the movement of the head and neck and intermittent swelling of the muscles of the neck. He suffered a severe concussion of the brain, resulting in recurrent headaches and dizziness. He sustained what is called a lumbar sacro sprain. While he has not been totally incapacitated for work, it appears that he can never do the character of work which he followed prior to his injury— such as road work and general farm work. His injuries are permanent and may require future medical treatment.

Many cases are cited by appellants, in which verdicts have been reduced because they have appeared to be the result of passion and prejudice. On the other hand, respondent has cited a number of cases in which verdicts larger than this have been sustained, where the plaintiffs' injuries do not appear to have been more severe than respondent's. It will serve no useful pur-

pose to discuss these cases. When a verdict is challenged as excessive, our only inquiry is whether it was the result of passion and prejudice. *Sherrill v. Olympic Ice Cream Co.,* 135 Wash. 99, 237 Pac. 14. We find nothing in the record to indicate that the jury in this case was influenced by passion and prejudice—although appellants do insist that the court, in its instructions, unduly stressed the fact that respondent was seeking to recover twenty-five thousand dollars. The suggestion, we think, is without merit. *Goldthorpe v. Clark-Nickerson Lumber Co.,* 31 Wash. 467, 71 Pac. 1091.

Judgment affirmed.

BEALS, MILLARD, and ROBINSON, JJ., concur.

STEINERT, C. J. (dissenting)—I am of the opinion that appellants, having brought themselves under the industrial insurance act by elective adoption, are entitled to immunity from a common law action for damages by respondent. I dissent.

## ON REHEARING.

### [*En Banc.* January 6, 1939.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.