[No. 27348.    Department Two.    May 4, 1939.]

THOMAS E. SMITH, *Respondent*, v. ELDRIDGE MOTORS, INC., *Appellant*.

A. E. WHEELER, *Respondent*, v. ELDRIDGE MOTORS, INC., *Appellant*.[1]

*Edge & Keith, Norman DePender,* and *H. E. Sarette,* for appellant.

*W. Lon Johnson* and *Davis, Heil & Davis,* for respondents.

[1]Reported in 90 P. (2d) 257; 93 P. (2d) 1120.

BEALS, J.—Eldridge Motors, Inc., a corporation, for some time prior to 1936, had been the agent, in the state of Washington, for the sale of Buick automobiles, and maintained its principal office in the city of Seattle. It had a branch in Spokane, the Spokane manager testifying that, while the Seattle office was a distributor, the Spokane office was simply a dealer, selling over twice as many used as new cars, and that only one salesman in the employ of the Spokane office was accustomed to attempt to sell cars outside of Spokane county, the other salesmen operating in Spokane and in "the surrounding territory, close by."

One Louis Ordner was, during the year 1936, a salesman working out of the Spokane office. July 19, 1936, Ordner was driving a Buick automobile south on highway No. 10, about two miles south of the town of Malott, in Okanogan county, when the car which he was driving collided with a Ford, which was proceeding north on the highway, driven by plaintiff A. E. Wheeler, plaintiff Thomas E. Smith and another person being passengers in the Ford car. As a result of the collision, Mr. Wheeler was seriously injured, Mr. Smith suffered some slight injuries, and the other passenger was killed.

The car which Ordner was driving was owned by defendant, and a Mrs. Beck and her two small children were passengers therein. All of the occupants of the Buick suffered serious injuries as the result of the accident.

Messrs. Wheeler and Smith each sued defendant Eldridge Motors, Inc., and Louis Ordner, seeking to recover damages by way of compensation for their injuries. After an order of consolidation, the cases were tried to a jury, which returned a verdict in favor of plaintiff Wheeler in the sum of $6,500, and a judgment in favor of plaintiff Smith in the sum of $500. Defend-

ant's motion for judgment in its favor notwithstanding the verdict, or in the alternative for a new trial, having been denied, judgment was entered on the verdicts, from which judgment Eldridge Motors, Inc., has appealed. Defendant Louis Ordner has not appealed from the judgment against him.

Appellant assigns error upon the denial by the trial court of its motion for judgment of dismissal at the conclusion of the evidence; upon the giving of one instruction and upon the refusal to give two other instructions requested by appellant; upon the denial of appellant's motion for judgment in its favor notwithstanding the verdict; and upon the denial of its motion for a new trial.

The evidence offered by respondents is to the effect that defendant Louis Ordner was in appellant's employ as one of its salesmen, and that the car which he was driving at the time of the accident was owned by appellant and had been assigned to Ordner for use in connection with his business as appellant's agent.

In its answer, appellant admitted that Ordner was a car salesman in its employ, but denied that, at the time of the accident, Ordner was acting as its agent or engaged in its business. Appellant cross-complained against respondent Wheeler, asking judgment for damages to appellant's automobile.

Appellant does not contend before this court that the accident was not the result of Ordner's negligence, and it is apparently conceded that the amounts of the verdicts are reasonable, in view of the injuries suffered by respondents. Appellant contends, however, that, at the time of the accident, Ordner was not acting within the scope of his employment as appellant's salesman, but was proceeding upon a journey for his own personal pleasure, and that consequently appellant is not liable to respondents.

It appeared that, two or three weeks prior to the accident, Ordner had become acquainted with a Mrs. McCauley, and that, just prior to July 19th, this lady, who was ill, desired to go to the home of her parents, who resided in Okanogan county. The car which had been assigned to Ordner as a demonstrator having for some reason been turned back to the company, Ordner, on Saturday, July 18th, informed the sales manager that he wanted to go on a trip the following day (Sunday), and that there were a couple of people he wanted to see. The sales manager then directed Ordner to take a designated car—whether the car which had been assigned to Ordner, or another, is not important.

It appears from the evidence of appellant's sales manager that appellant's salesmen had considerable latitude in endeavoring to sell in territory beyond the limits of Spokane, and that each used the demonstrator car assigned to him, very much as he pleased. While the company did not approve of its salesmen using their demonstrator cars for pleasure trips, a salesman could use his car practically as his own, unless the company found that he was abusing the privilege. Ordner testified that, if his car had been in his possession as it usually was, he would simply have used it for the trip, without saying anything to anyone.

Ordner and Mrs. McCauley left Spokane early on the morning of Sunday, July 19th, drove to Mason City, where they picked up Mrs. Beck, a sister of Mrs. McCauley, and Mrs. Beck's two children, whence they proceeded to the residence of the ladies' parents, at Riverside, where they dined and remained about two hours. After the visit, Ordner, together with Mrs. Beck and her children, started on the return trip, the accident occurring after they had proceeded about twenty-five miles on their way.

Mesdames McCauley and Beck testified that no sales

prospects were interviewed by Ordner during the trip, and that neither of the witnesses was interested in the purchase of an automobile.

It appears that, sometime prior to the trial, the deposition of defendant Louis Ordner had been taken, pursuant to stipulation of the parties. At the trial of the action, as part of their case in chief, respondents called Louis Ordner as an adverse witness. He was not present in court, and did not respond. Respondents' counsel then requested that Mr. Ordner's deposition be published, and the court ordered that this be done. Respondents' counsel then read the deposition, which recited that Louis Ordner had been called as a witness on behalf of the defendants, appellant and himself; his deposition, however, was read on the trial of the action by respondents, as part of their case in chief.

In the course of his deposition, Mr. Ordner testified that he was a salesman in appellant's employ; that appellant's sales jurisdiction consisted of Spokane county; and that, at the time of the accident, he was driving a demonstrator car, owned by appellant, and by it furnished to the witness. He further testified that he had no business for appellant in Okanogan county, and that, on the day of the accident, he transacted no business with anyone; that he was not authorized to work in Okanogan county, and that the trip was entirely one for his own convenience and pleasure; that he wanted to see the Coulee dam, and had offered to take his friend, Mrs. McCauley, to her parents' home. He testified that he was not required to work on Sundays, but that he could do so if he desired.

Appellant's sales manager testified that appellant's salesmen were not encouraged to attempt to sell cars at points distant from Spokane, as it was expensive to make such sales. This witness stated that a salesman desiring to drive a company car outside of his county

was supposed to obtain permission from the manager or the witness; that Ordner had no permission to take a company car to Okanogan county; and that, if he had requested such permission, it would have been refused. The witness further stated that the Spokane office was not transacting business in Okanogan county, and during the witness' connection with the company, had sold no cars in that territory. He further testified that salesmen were not supposed to take women friends with them on business trips, and that, while Ordner had asked the witness for the use of a car on the Sunday in question, which request the witness had granted, Ordner did not say anything about desiring the car to show to any prospective purchasers. The testimony of other witnesses called by appellant was to the same effect.

Appellant argues that Ordner undertook the trip entirely for his own pleasure, and contends that the evidence shows that Ordner used appellant's automobile solely for his own purposes, and that, for this reason, it is not liable to respondents for Ordner's negligence.

It is admitted that appellant had the agency for the sale of Buick cars for the entire state of Washington, and that the Spokane office was a branch of the Seattle office; that the activities of salesmen operating out of the Spokane office were not confined to Spokane, but that they could sell in surrounding territory, and that, if a Spokane salesman made a sale at or near Coulee dam, or other place outside of Spokane county, the matter would be taken up with the nearest dealer, and the commission divided. The record contains testimony to the effect that, if one of the salesmen operating elsewhere found a prospect in Spokane who wanted to buy a Buick, the sale would be made, and that it had happened that a salesman had sold a car outside of

his own territory and an adjustment had been made with the local dealer.

Respondents call attention to Ordner's testimony to the effect that, on Saturday, July 18th, when asking for a car for Sunday, in order to get the car, he said to the sales manager, "I got a couple of people I want to see," and again, "I says, 'Say, listen, I have got a couple of people I want to see in the country tomorrow and I want a car to use.' "

Appellant's sales manager testified, on cross-examination, that there were eight or ten salesmen working out of the Spokane office; that the salesmen were not restricted as to hours of work; that a demonstrator is a car assigned to a salesman to show to prospective customers; that salesmen were supposed to find prospective buyers, and were expected to contact anyone in the market for a car and endeavor to sell a Buick; that the salesmen kept their demonstrators in their possession at all times, being permitted to use them as their own cars so long as the privilege was not abused.

Ordner, in his deposition, stated that he commenced to work for appellant during the month of March, 1936, and worked continuously to the date of the accident. He admitted that he testified in a prosecution against him in Okanogan county, growing out of the collision, that the trip was a combination of business and pleasure, that he had expected to contact two prospects on the way, and that he did contact one of them. He also testified that he had a book in which he wrote the names of prospects, and that in this book appeared the name of a person at Davenport.

The undisputed evidence that appellant owned the car which Ordner was driving, and that Ordner was in its employ, made a *prima facie* case, sufficient, until met by the testimony of disinterested witnesses,

to carry to the jury the question of fact as to whether or not Ordner was operating the car on appellant's business. *Steiner v. Royal Blue Cab Co.*, 172 Wash. 396, 20 P. (2d) 39. In the case of *McMullen v. Warren Motor Co.*, 174 Wash. 454, 25 P. (2d) 99, the question of the overthrow of such a *prima facie* case by interested witnesses was discussed.

From the evidence, it clearly appears that, if Ordner had arranged for the sale of a Buick car in Okanogan county, the sale would have been accepted by appellant, the car delivered from some branch, and the commission appropriately distributed.

On several occasions, this court has considered questions quite similar to that here presented. In the case of *Buckley v. Harkens*, 114 Wash. 468, 195 Pac. 250, it was held that the question of whether a negligent driver was, at the time of an accident, engaged in the business of his master, was for the jury, when the evidence warranted the jury in finding that the driver was in the master's employ as a salesman of its motor trucks, working on a salary and commission; that, while he owned the automobile which he was driving, he received a monthly allowance for its upkeep; and that the car was driven under a license issued to the employer; it further appearing that no restrictions were put upon the employee as to the time when, or purposes for which, he could drive the car. The accident occurred while the employee was driving home after having taken a fellow employee to a ferry. A judgment entered in favor of the defendant, notwithstanding a verdict for the plaintiff, was reversed.

In the case of *Poundstone v. Whitney*, 189 Wash. 494, 65 P. (2d) 1261, a case involving questions similar to that here presented, this court said:

"Whether an employee, at the time the act was done for which the employer was sought to be held liable, was within the scope of his employment, depends upon whether the act had been expressly or impliedly authorized by the employer. In addition to this, the employer is liable if the act complained of was incidental to the acts expressly or impliedly authorized or indirectly contributed to the furtherance of the business of the employer."

It was also held that the fact that the employee was performing an unauthorized act would not, of itself, defeat a recovery, citing *Loux v. Harris*, 226 Mich. 315, 197 N. W. 494.

In the case of *Templin v. Doan*, 187 Wash. 68, 59 P. (2d) 1110, we held that it was for the jury to say whether or not the master was liable for the negligence of an employee in operating a motorcycle after hours, for the purpose of showing another employee how to drive the motorcycle. The case has some bearing upon the question here presented.

In the case of *Murray v. Kauffman Buick Co.*, 197 Wash. 469, 85 P. (2d) 1061, a case presenting questions similar to that in the case at bar, a judgment rendered in favor of the defendant, notwithstanding a verdict in favor of the plaintiff, was reversed. It was admitted that the driver of the car was in the defendant's employ, but it was strenuously contended that, at the time of the accident, the employee was driving the automobile upon his own personal business, nowise connected with, or in furtherance of, the affairs of his master, nor within the scope of his employment. It was also contended that the car was being driven by the employee contrary to the master's express direction. This court, quoting from the opinion in the case of *Forsberg v. Tevis*, 191 Wash. 355, 71 P. (2d) 358, and the opinion of the supreme court of California, in the case of *Ryan v. Farrell*, 208 Cal. 200,

280 Pac. 945, held that, in the case cited, a question was presented upon which the jury should pass. The decision was based upon the fact that the evidence introduced by the employer was, to some extent, contradictory, and that the testimony of the driver of the car was not entirely consistent with physical facts. In the course of the opinion, this court quoted from the opinion of the supreme court of California, in the case of *Ryan v. Farrell, supra,* as follows:

"It is the established rule in this jurisdiction that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master."

In 1 Shearman & Redfield on Negligence (6th ed.), 362, § 147, the rule is stated in practically the same language.

In 5 Blashfield Cyc. of Automobile Law, 144, § 3014, is found the following:

"Where an employee is intrusted with the possession and operation of a vehicle, with permission to use it in his discretion in the business of his employer, the latter will be held responsible for injuries inflicted upon another resulting from negligence in the operation of the vehicle while using it in such business. In such a case, it is not necessary to prove that the employee was engaged in executing any particular business of his principal; it being sufficient to show that he was acting within the general scope of his employment."

The supreme court of California, in the case of *Vitelli v. Stanbrough,* 118 Cal. App. 120, 4 P. (2d) 818, approved the rule above quoted from Blashfield Cyc. of Automobile Law.

The supreme court of Minnesota, in the case of *Lausche v. Denison-Harding Chevrolet Co.,* 185 Minn. 635, 642, 243 N. W. 52, affirmed a judgment rendered on the verdict of a jury, holding an employer liable for the negligence of its employee in driving an automobile, holding that the evidence was sufficient to support the jury's finding that the driver was, at the time of the accident, within the scope of his employment. It was the driver's duty to search for purchasers of automobiles. On the afternoon of the accident, the employee told his employer that he was going to a certain town, to which trip the employer assented, assuming that the employee was going on the employer's business. The employee and a friend then drove to the town mentioned, where the employee proceeded to indulge to excess in intoxicating liquor. His friend then undertook to drive the car, the accident occurring on the trip home. In the course of its opinion, the court said:

"Under the terms of his employment, whether Aldrich went to Cass Lake to look up a particular prospect or whether he went there to meet and get acquainted with people and look for prospects generally, he would in either case be within the scope of his employment."

The cases of *Miller v. Service & Sales, Inc.,* 149 Ore. 11, 38 P. (2d) 995, 96 A. L. R. 628; *Primos v. Gulfport Laundry etc. Co.,* 157 Miss. 770, 128 So. 507; and *Krousel v. Thieme,* 13 La. App. 680, 128 So. 670, are cited by respondents, and support their contention.

In the case at bar, appellant's ownership of the car was admitted, as was Ordner's employment by appellant. The jury were entitled to consider Ordner's use of one of appellant's cars as a demonstrator, in an attempt to increase appellant's sales and earn commissions for himself, together with evidence tending to

show that Ordner had a rather broad license to sell cars throughout a territory not very clearly defined.

Ordner testified that he came and went as he pleased, generally kept in his own possession the car assigned to him, and that he carried a key to appellant's garage. Ordner also testified that he had a prospect at Davenport, whose name he had procured at an automobile show. He testified that he might have sold this prospect a used car, and that, under the company's rules, if he had contacted a prospective purchaser in Spokane, he could have sold a car to that purchaser, even though the purchaser resided beyond the limits of Spokane county.

Ordner admitted that, in the criminal prosecution brought against him in Okanogan county, he had testified that the purpose of the trip was in part to interview two persons whom he thought might purchase cars. In his deposition given in the case at bar, Ordner stated, in effect, that he had not told the truth in giving the testimony referred to before the Okanogan county court.

It clearly appears that there were few restrictions placed by appellant upon Ordner's use of any demonstrator assigned to him. It was his duty to find his own customers; and of course, his success depended upon the number of sales resulting from his efforts.

In the case at bar, Ordner testified that he told appellant's sales manager that he wanted to use the car on the following day to see a couple of people "in the country," and while appellant's sales manager denies this, he admitted that Ordner asked for a car, and that one was turned over to him. Ordner's entire testimony was before the jury, together with other evidence concerning the general method followed by appellant and its salesmen in endeavoring to sell automobiles.

new and used. Appellant argues that its witnesses were disinterested, as at the time of the trial they were not in appellant's employ, and we have given this phase of the case due consideration.

There is considerable contradiction in the evidence, and the jury were not bound to believe the testimony relied on by appellant, to the effect that the sphere of activities of its salesmen in endeavoring to sell automobiles was confined to a very limited area in and about Spokane. The evidence presented a disputed question of fact.

It cannot be held that, as matter of law, the trial court should have taken the case from the jury and granted judgment in appellant's favor, or that the verdict of the jury should have been set aside and judgment entered in favor of appellant. Consideration of the record, in the light of the authorities, convinces us that a case was made which was properly submitted to the trier of the facts.

Appellant assigns error upon the giving of an instruction, but having failed to print in its opening brief the instruction complained of, cannot avail itself of this assignment. Rule 16, Rules of Court, paragraph 5, 193 Wash. 25-a; *State v. Elwood,* 193 Wash. 514, 76 P. (2d) 986.

Appellant also assigns error upon the refusal of the trial court to give two of its requested instructions. In the case of *State v. Hussey,* 188 Wash. 454, 62 P. (2d) 1350, we held that error could not be assigned upon the refusal to give requested instructions which were not printed in full in the appellant's opening brief. The rule, by its terms, does not cover requested instructions, but whether they should be included within the rule or not, appellant's opening brief contains no argument in support of this assignment of error, and

examination of the instructions given convinces us that the jury was properly instructed as to the questions which should be determined by the jury's verdict.

The record is free from error, and the judgment appealed from will stand affirmed.

BLAKE, C. J., MILLARD, and GERAGHTY, JJ., concur.

SIMPSON, J. (concurring in the result) — While I am unable to subscribe to the rule announced relative to the requirement that the presumption of agency can only be overcome by the testimony of disinterested witnesses, I concur in the result.

### ON REHEARING.

[*En Banc.* September 22, 1939.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.