[No. 28192.   Department One.   November 7, 1941.]

MAX GEPHART, *Respondent*, v. JESS STOUT, *Appellant.*[1]

[1]Reported in 118 P. (2d) 801.

*H. Earl Davis,* for appellant.

*R. E. Lowe,* for respondent.

DRIVER, J.—This is an action to recover damages for personal injuries sustained by plaintiff when a motorcycle with a sidecar attachment, which he was driving, collided with an automobile owned and operated by the defendant. A jury returned a verdict for the plaintiff. The defendant made timely motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial, all of which the trial court denied. The

defendant appealed from the judgment entered on the verdict.

The collision occurred on September 6, 1939, within the right-angle intersection of east-west arterial Third avenue and north-south nonarterial Wall street, in the city of Spokane. Strangely, none of the numerous witnesses definitely fixed the hour. The record indicates that it was some time in the afternoon before sundown. The weather was clear, and the streets were dry.

Third avenue is fifty-one feet wide between curb lines, with a twelve-foot sidewalk on either side. Wall street is forty-two feet wide between curb lines. The streets are paved. There are stop signs both north and south of the intersection. A driver approaching it from the south would be confronted by two such signs, one, a flexible rubber flap, with the word "STOP" on its southerly face, set in the pavement in the center of the south line of the pedestrian lane, and the other, a conventional octagonal, arterial sign, standing just inside the curb on the right (east) side of Wall street, twenty-five feet south of the intersection. On the southeast corner of the intersection, there is a four-story apartment house. Its north and west walls are flush with the property lines.

The jury could have found from the testimony of respondent and his witnesses that the accident happened in the following manner: There was considerable traffic on Third avenue at the time, "a string of cars going west and a string of cars going east," as one witness put it. Appellant was driving north on non-arterial Wall street, respondent west on arterial Third. Appellant drove his automobile into the intersection without stopping, passing to the left of a car which had halted and was waiting to enter it. When appellant was about half way through the intersection, he

turned to his left and drove the front of his car against the left side of respondent's motorcycle, pushing it over to the curb at the northwest corner. Respondent had been proceeding on his right (the northerly) side of Third, at twenty miles an hour, slowing to fifteen as he neared the intersection. When he was about forty feet from it, he looked to his left. He saw some cars going east on Third and a car headed north, which had stopped back of the rubber stop sign on Wall. He did not look to his left again and did not see appellant's automobile until it struck his motorcycle after he had gone three fourths of the way across the intersection. Respondent's left leg was badly crushed and broken, he was confined in a hospital for more than three months, and he suffered permanent impairment of motion of the ankle joint.

The appellant and his witnesses gave a quite different account of the accident. They testified that appellant did stop before entering the intersection, and that the respondent was driving greatly in excess of the lawful speed limit, but, clearly, the factual conflict was for the jury to resolve. It is too apparent to call for comment or citation of authority that, in the instant case, neither the question of the negligence of the appellant nor the question of the contributory negligence of the respondent should have been determined by the court as a matter of law.

Appellant assigns as error the trial court's denial of his motions challenging the sufficiency of the evidence, but, on that score, his principal contention is that respondent's action was barred by certain provisions of the workmen's compensation act, or, as it is sometimes called, the industrial insurance act.

Without question, respondent, making deliveries by motorcycle, was a workman engaged in extrahazardous employment under the act at the time of his injury.

Before starting suit, he formally elected to seek his remedy by suit against the appellant rather than apply for workmen's compensation. But appellant was the owner of an auto freight transportation business (also concededly classified as extrahazardous), operating under the name of Spokane Pacific Line. He paid premiums to the department of labor and industries on the basis of his reported payrolls, although he did not carry himself on such payrolls for permissive employee benefits. The portion of the act upon which appellant particularly relies is the italicized proviso in the following quotation from Rem. Rev. Stat. (Sup.), § 7675 [P. C. § 3470]:

"Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: *Provided, however,* That if the injury to a workman is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, . . . *Provided, however, That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act.*" (Italics ours.)

Appellant's contention presents this question: Was the appellant, as an employer *at the time of the accident, in the course of any extrahazardous employment* within the meaning of the language of the statute? There is no evidence in the record that appellant was doing anything in connection with the conduct of his motor freight transportation business when the collision occurred. He was driving a five-passenger sedan automobile. No one was with him in the car. There is no indication as to where he was going or what his

mission was other than the following testimony, which he gave on direct examination:

"Q. Now, on the day of this accident, Mr. Stout, where had you been just prior to the accident? A. Home. Q. And that is up on Sixth Avenue? A. Yes, sir. Q. And where were you going? A. I was going to the Carpenters' Union Hall."

This court has never before had occasion to pass upon a case involving precisely similar circumstances. Appellant cites a number of the workmen's compensation decisions of this court, but all of them are factually distinguishable. In *Robinson v. McHugh,* 158 Wash. 157, 291 Pac. 330, the third party employer, held not subject to suit by the injured workman, was a contributor to the industrial insurance fund, but, clearly, at the time of the accident, the employer also was actually engaged in extrahazardous work, which involved the operation of the very agency by which the workman's injury was inflicted (moving a gasoline power shovel). The same may be said of *Denning v. Quist,* 160 Wash. 681, 296 Pac. 145. The third party employer's activity at the time of the accident in that case was building construction work, and the plaintiff workman was injured in an elevator, or hoist, used in the prosecution of such work.

*O'Brien v. Northern Pac. R. Co.,* 192 Wash. 55, 72 P. (2d) 602, was a suit by a brewery truck driver for personal injuries resulting from a collision of his truck with a train of a railroad company engaged in both interstate and intrastate commerce. The principal departmental opinion held that, although the operation of a train was an extrahazardous business, yet the company could be sued at the election of the injured workman, because it was not subject to the state industrial insurance act and had made no contributions to the state fund. Two judges specially concurred in the re-

sult on the ground that, in contemplation of law, the company was not "in the course of any extra-hazardous employment" under the act. The principal opinion was approved, however, in a later *En Banc* decision, *Reeder v. Crewes*, 199 Wash. 40, 90 P. (2d) 267.

There, third party employers, engaged in extra-hazardous business at the time of an accident, were nevertheless held subject to suit by an injured workman not in their employ because such employers were at the time in default in the making of payroll reports and in the payment of premiums required by the act. The two last mentioned cases established the rule that a third party employer who does not contribute to the industrial insurance fund is subject to suit by a workman, but it does not follow that such an employer who does contribute to the fund is immune. *Pryor v. Safeway Stores, Inc.,* 196 Wash. 382, 83 P. (2d) 241, 85 P. (2d) 1045. In that case, it was held that third party employers not engaged in extrahazardous work at the time of an accident, were subject to suit even though they had brought themselves within the elective adoption provisions of the workmen's compensation act and had contributed to the fund by the payment of payroll premiums. This holding of the majority departmental opinion, which was approved on rehearing *En Banc,* was based, in the language of the opinion, upon "the terms of the act itself." The "terms" considered particularly significant were those of the identical proviso advanced by the appellant in the case at bar. Commenting thereon, the court said:

"Plainly, under this limitation, an employer under the act, either under the compulsory or elective provisions, is immune from an action in damages for negligent injury of a workman not in his employ only when, '*at the time of the accident,*' such employer is engaged in '*extra-hazardous employment.*' "

In *Weiffenbach v. Seattle,* 193 Wash. 528, 76 P. (2d)

589, plaintiff, while engaged in the extrahazardous work of measuring the roof of a building for repairs, was injured by contact with a high voltage wire, which was a part of a power distribution system operated by the city of Seattle. As to such system, the city was within the compulsory provisions of the industrial insurance act and paid premiums into the insurance fund. The city was held to be immune from suit, but the basis of the holding was that the high voltage transmission line was an integral part of an extrahazardous operation which the city was carrying on at the time of the accident. The following quotation from the opinion makes that clear:

"Assuming that an employer was engaged in transporting some product, as coal or ore, over a long stretch of tramway, in cars drawn by cables moving from a central plant, and that, in the operation, a workman in another extrahazardous employ was injured, could it be said that, as to this operation, the employer was not engaged in employment because no workman of the employer was, at the time, engaged in the operation outside the central plant? *If the city had abandoned the use of the wire for the transmission of electricity so that it was no longer performing any function as a part of its operating system, then, of course it would be a mere condition within the principle contended for by the appellant* [plaintiff]. *It would be then no longer a part of the industry or the extrahazardous employment in which the respondent* [defendant] *was engaged.*" (Italics ours.)

In *Lunday v. Department of Labor & Industries,* 200 Wash. 620, 94 P. (2d) 744, the plaintiff claimed a widow's pension under the workmen's compensation act, and the principal question was whether or not her husband was a workman within the meaning of the act. He had been working as a grocery clerk, not an extrahazardous employment, but part of his time was spent assisting in making deliveries for his employer.

He was fatally injured at the end of a trip on a delivery truck which carried both meat and groceries. Because of certain circumstances of that case, which we shall not detail here, the delivery of meat was considered to come within the extrahazardous category, and it was held that, *at the particular time of the accident,* both he and his employer were engaged in extrahazardous employment. The implication of the decision is that both employer and employee may be subject to the act as to one extrahazardous phase of a business, but not subject to it as to another nonextrahazardous phase of the same business.

While the foregoing cases are not directly in point, they do clearly establish two essential requirements which an employer must meet to entitle him to immunity from suit by a workman not in his employ: (1) The employer must be a contributor to the workmen's compensation fund; and (2), *at the time of the accident,* the employer must be *in the course of some extrahazardous employment* under the industrial insurance act. To satisfy the second requirement, the negligent act or omission which is the basis of the workman's cause of action must arise out of, or be in some way connected with, an extrahazardous employment or business then being carried on by the employer. We do not think the legislature intended, by the statutory proviso in question, to grant to every individual who may happen to own an extrahazardous business or a business having some extrahazardous phase, a blanket immunity from suit as a third party employer for his personal negligence at all times, in all places, and in connection with all activities in which he may engage.

In the present case, the appellant was not in the course of any extrahazardous employment at the time of the accident. The respondent, therefore, had the

right, as he elected to do, to seek his remedy by suit against appellant rather than take the benefits provided by the workmen's compensation act.

■ Appellant vigorously maintains that the trial court erred in denying his motion for a mistrial, based upon the following testimony which respondent's first witness gave on direct examination:

"Q. Do you recognize the defendant [appellant] Mr. Stout, as some one you saw near there at that time? A. Yes. I believe he is the gentleman that came back and told the boy— MR. DAVIS: Just a moment. I object. A. (continuing)—that he had nothing to worry about;— THE COURT: Just a minute. The objection is sustained. A. (continuing)—that he was fully covered by insurance. MR. DAVIS: Just a moment. I object as not responsive. THE COURT: The objection is sustained and the jury instructed to disregard the answer of the witness."

In ruling upon the appellant's motion, the trial court said:

"The motion of the defendant [appellant] that the Court order a mistrial is denied for the reason that it is my belief that the question was not of such a nature as to indicate deliberate intent to inject the matter of insurance into the case, nor was it the intention of the witness to do so; that counsel for the defendant objected in the midst of the witness' answer and was joined by counsel for the plaintiff [respondent], as I recall it. MR. LOWE [respondent's counsel]: Well, I said something. I wouldn't say that I objected. I think I started to admonish the witness. I wouldn't say what my words were. (Reporter's note: This statement is in accordance with reporter's recollection, but with four people talking, Mr. Lowe's statement was neither understood nor written down.)"

A mistrial should not have been granted unless it appeared that counsel for respondent or the witness deliberately, wilfully, or collusively had undertaken

to inform the jury that the appellant was in some way protected by insurance. *Jensen v. Schlenz,* 89 Wash. 268, 154 Pac. 159; *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12; *Demase v. Nemitz,* 144 Wash. 404, 258 Pac. 25; *Nicholson v. Brado,* 162 Wash. 146, 297 Pac. 1093.

As Judge Chadwick stated in *Jensen v. Schlenz, supra:*

"The gravamen of the offense is not in the disclosure of a collateral fact, but in the manner of its disclosure, that is, the misconduct of counsel."

In the instant case, we think the record amply supports the trial court's conclusion that the mention of insurance by the witness was inadvertent. The objectionable portion of her answer, it will be noted, was wholly unresponsive to the question which immediately preceded it. During the short time she had been on the witness stand, she displayed a marked tendency to state conclusions and to give unresponsive answers, due probably, it seems reasonable to assume, to nervousness and lack of experience as a witness. Twice before, objections to her statements on the ground that they were conclusions had been sustained, and the court had directed that they be stricken. Immediately before the incident in question, respondent's counsel had interrupted the witness and warned her not to relate a conversation. She stated that she had no interest in the case and had met neither of the parties prior to the accident. There is nothing to the contrary in the record. The trial court properly declined to declare a mistrial.

█ Appellant asserts that a remark made by respondent's counsel in the course of his argument to the jury, to the effect that Mr. Stout (the appellant) was not very much concerned about what happened on the trial, amounted to prejudicial misconduct. Ap-

pellant's counsel objected to the remark, and the court overruled the objection with an admonition to the jurors that they were to judge what was the defendant's (appellant's) demeanor or conduct during the trial. Appellant did not move for a mistrial. Considered merely as a comment on the appellant's attitude and deportment at the trial in the presence of the jury, counsel's remarks were not improper. *Carmody v. Trianon Co.*, 7 Wn. (2d) 226, 109 P. (2d) 560. And it would seem to be a farfetched conclusion that, standing alone, counsel's comment would lead the jurors to assume that the appellant carried liability insurance.

It seems to be appellant's position that, considered in connection with the above-quoted testimony of respondent's first witness, the argument was improper and prejudicial, but we see no reason why it should be so considered. Respondent's counsel did not mention insurance in his argument, and he did not refer to the testimony in question. The testimony was given on the first morning of the trial, while the argument came several days later near its close.

Appellant assigns as error the admission in evidence of two photographs depicting respondent lying on what is known as a fracture bed. Appellant says that they were not properly identified and that they were of such a character as to appeal to the passion and prejudice of the jurors. The photographs were first offered after they had been identified by respondent. He stated that they showed him in his hospital bed before his injured leg had been put in a cast, "the way it actually was." Appellant's objection to the admission of the pictures on the ground that they had not been taken by the respondent, was sustained. Respondent's attending physician was then called as a

witness. He stated that, in his treatment of respondent, traction had been applied to the broken leg, and the witness described the apparatus that had been used. He said that the photographs in question depicted this apparatus, the fracture bed, and the position in which respondent's injured leg was held, although he could not definitely identify respondent as the patient shown in the photographs. They were again offered, and were admitted in evidence over objection, as the court stated, "to serve the sole purpose of illustration as to the position that the plaintiff was in and the apparatus, the type of the apparatus used in his treatment during his hospitalization at the hospital, and for no other purpose."

The photographs were sufficiently identified and were admissible for the stated purpose. There is nothing gruesome or shocking about them, and, manifestly, they are not the types of photographs which have been held objectionable for the reason that they tend to arouse passion and prejudice.

■ During his argument, respondent's counsel offered to read to the jury a portion of the testimony of a certain witness from a transcript prepared by the court reporter. Appellant objected unless the whole of the evidence of the witness should be read. The court overruled the objection, with the cautionary admonition that the jurors were the judges "as to what the testimony of the witness was." Appellant has assigned the court's ruling as error.

"It is within the sound discretion of the trial court to permit, or to refuse to permit, counsel in his argument to read matter to the jury from a transcript of the stenographer's notes." 64 C. J. 256, § 275.

In the footnote, among a number of cases cited in support of the foregoing rule, is *Smith v. Northern Pac.*

R. Co., 79 Wash. 448, 140 Pac. 685. It does not appear that the trial court abused its discretion in the present case.

▮ Appellant also complains of the court's refusal to give one of his requested instructions, which was, in effect, a variation of the familiar rule that the favored driver at an intersection has only a relative, rather than an absolute, right of way. The substance of the requested instruction was embodied in the court's instruction No. 9, whereby the jury was correctly informed of the applicable rules of law with reference to intersection rights of way.

▮ In other assignments of error, appellant questions the correctness of two of the court's instructions. However, they appear in small part only in appellant's brief. An objection based on an instruction of the court will not be considered unless the instruction is set out in full in the brief. Rule XVI, § 5, of the supreme court, 193 Wash. 25-a; *Lund v. Seattle,* 163 Wash. 254, 1 P. (2d) 301; *Carpenter v. Gooley,* 176 Wash. 67, 28 P. (2d) 264; *State v. Seabrands,* 191 Wash. 472, 71 P. (2d) 393; *State ex rel. Knabb v. Frater,* 198 Wash. 675, 89 P. (2d) 1046; *Smith v. Eldridge Motors, Inc.,* 199 Wash. 10, 90 P. (2d) 257, 93 P. (2d) 1120; *Simmons v. Kalin,* 10 Wn. (2d) 409, 116 P. (2d) 840.

▮ Moreover, the foregoing assignments of error with reference to the court's instructions, and two additional ones, are stated, but not argued, in appellant's brief. Without the benefit of discussion, we are unable to discover substantial merit in any of them, and they will not, therefore, be considered further. *Karr v. Mahaffay,* 146 Wash. 569, 264 Pac. 2; *Anderson v. Department of Labor & Industries,* 174 Wash. 702, 26 P. (2d) 77; *Smith v. Department of Labor & Industries,* 176 Wash. 569, 30 P. (2d) 656; *Walker v. Wiley,* 177

Wash. 483, 32 P. (2d) 1062; *Bremerton Creamery & Prod. Co. v. Elliott,* 184 Wash. 80, 50 P. (2d) 48.

Judgment affirmed.

ROBINSON, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.

